**ORIGINAL**

Timothy S. Noon, Esq. (SBN 166193)
Kathy J. Steinman, Esq. (SBN 221344)
**NOON & ASSOCIATES, APC**
501 West Broadway, Suite 710
San Diego, California 92101
Telephone: (619) 235-6200
Facsimile: (619) 235-6233

Attorneys for Plaintiff GLOBAL TECHNICAL SEARCH, INC.
dba GLOBAL SEARCH

FILED

08 MAR -6 PM 2: 17

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: __cr__                    DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL TECHNICAL SEARCH, INC. dba GLOBAL SEARCH, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>LELAND JACOBSEN, an individual; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. '08 CV 0424 BEN BLM<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF FOR:**<br>**1) VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. §1030;**<br>**2) VIOLATION OF CALIFORNIA** *PENAL CODE* **§502(c)(2);**<br>**3) UNFAIR BUSINESS PRACTICES (CALIFORNIA** *BUS. & PROF. CODE* **§17200,** *et seq.***);**<br>**4) BREACH OF WRITTEN CONTRACT**<br>**5) CONVERSION; and**<br>**6) DECLARATORY RELIEF**<br><br>*DEMAND FOR JURY TRIAL* |

COMES NOW Plaintiff GLOBAL TECHNICAL SEARCH, INC. dba GLOBAL

SEARCH, and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff GLOBAL TECHNICAL SEARCH, INC. dba GLOBAL SEARCH

("GLOBAL SEARCH") is a California corporation with its principal place of business in

Carlsbad, California.

2.      Plaintiff is informed and believes and thereon alleges that Defendant LELAND

JACOBSEN is an individual residing in Murietta, California.

3.    Defendant JACOBSEN was an employee with GLOBAL SEARCH from on or about May 8, 2006 to January 2, 2008. Defendant JACOBSEN's job title was Independent National Associate.

4.    A substantial part of the events which give rise to plaintiff's claim and resulting damages occurred within the judicial district where this action is filed.

5.    Defendant DOES 1 through 25, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to plaintiff. When their true names and capacities are ascertained, plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by those defendants. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant refers also to all defendants sued under fictitious names.

6.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned each of the defendants, including all defendants sued under fictitious names, was the agent, partner, joint venturer, and/or employee of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of this agency, partnership, joint venture, and/or employment.

7.    Jurisdiction is proper pursuant to 28 U.S.C. §1331, based upon a claim arising under the Computer Fraud and Abuse Act, 18 U.S.C. §1030, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367(a).

8.    This Court has personal jurisdiction over Defendant JACOBSEN and venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because a substantial part of the events which give rise to plaintiff's claim and resulting damages occurred within the judicial district where this action is filed.

/ / /

/ / /

/ / /

NOON & ASSOCIATES, APC

## FACTS COMMON TO ALL CAUSES OF ACTION

9.    GLOBAL SEARCH is a recruiting firm that specializes in recruiting and placing personnel and executives for environmental, engineering and corporate employer-clients nationwide.

10.    Defendant JACOBSEN was an employee with GLOBAL SEARCH from on or about May 8, 2006 to on or about January 2, 2008.  Defendant JACOBSEN's job title was Independent National Associate.

11.    GLOBAL SEARCH has invested substantial time and money developing information and knowledge relating to its employer-clients and the business of recruiting and placing candidates.  This information developed by GLOBAL SEARCH over the past 18 years is confidential and proprietary and contains confidential employer-client and candidate information, including but not limited to, identity of candidates, candidate information, identity of employer-clients, personnel needs of employer-clients, fee agreements, pricing, and other sensitive and confidential information.

12.    GLOBAL SEARCH organizes, maintains and accesses this confidential and proprietary information it has developed using a database on its networked office computers. GLOBAL SEARCH and its employees additionally use these computers to communicate with clients nationwide.

13.    GLOBAL SEARCH rigorously maintains the confidentiality of its proprietary information because the information provides GLOBAL SEARCH with a competitive advantage in the marketplace from which GLOBAL SEARCH derives economic value.  Furthermore, GLOBAL SEARCH informs the candidates and its employer-clients that information they provide GLOBAL SEARCH to assist in the placement and/or recruitment of candidates will be kept confidential.

14.    Defendant JACOBSEN entered into a written employment agreement with GLOBAL SEARCH on or about May 8, 2006.  A true and correct copy of the employment agreement, titled Independent National Associate Account Executive Employment Agreement ("Employment Agreement") is attached hereto as **Exhibit "1."**

15.    Section 2(a)(vii) of the Employment Agreement states that the Independent National Associate ("INA"):

> acknowledges that the duties of an INA are confidential, sensitive and professional in nature, and that they require the Account Executive to function in a discretionary executive capacity with regard to screening candidates and advising candidates and employer-clients, assisting them in negotiations, and otherwise developing and managing the areas of the Company's business for which the INA is assigned responsibility . . .

16.    Section 4(f) of the Employment Agreement further states:

> the term "Company's Proprietary Information" as used in this Agreement means the Company's confidential proprietary information constituting the trade secrets of the Company, including but not limited to information of a technical and business nature pertaining to the Company's personnel placement service business, the identity of candidates, the personal information supplied by candidates, information concerning the identy [sic] of employer-clients and their personnel, the personnel needs and requirements of employer-clients and terms and conditions under which the Company deals with employer-clients, other customer lists, training manuals, training tapes, computer programs, films, video cassettes, records, forms, unique techniques, methods and procedures for the operation of a personnel placement service business or similar types of businesses, its contacts with such companies, its suppliers, etc. . . .

17.    Section 5(b)(i) of the Employment Agreement states:

> that **upon termination of this Agreement, the INA shall immediately turn over to the Company the Company's Proprietary Information**, including but without limiting the generality of the foregoing, any and all lists, documents, or other types of records and any written, typed or printed materials identifying the candidates of the Company or identifying the employer-clients or personnel of employer-clients together with any and all data involving advertising techniques, candidate processing, forms, correspondence or data in any way involving the Company's techniques, training manuals, training tapes, video cassettes, computer programs, materials, methods or contacts, **and that the INA shall have no right to retain any copies of the foregoing for any reason whatsoever after termination of his or her employment hereunder** without the express written consent of the Company . . . .

[Emphasis added.]

NOON & ASSOCIATES, APC

18.    Section 6 of the Employment Agreement states:

   (a)    It is understood and agreed that, in the course of his or her employment hereunder and through the INA's activities for and on behalf of the Company, the INA will receive, deal with and have access to the Company's Proprietary Information and that the INA holds the Company's Proprietary Information in trust and confidence for the Company.

   (b)    ***The INA agrees that he or she shall not, during the term of this Agreement, or thereafter in any fashion, form or manner, directly or indirectly, retain, make copies of, divulge, disclose or communicate to any person, in any manner whatsoever, except when necessary or required in the normal course of the INA employment hereunder and for the benefit of the Company or with the express written consent of the Company:***

      ***(i)    the Company's Proprietary Information; or***

      ***(ii)    any information of any kind, nature or description whatsoever concerning any matters affecting or relating to the Company's personnel placement service business and the Company's personnel placement service.***

[Emphasis added.]

19.    During his employment at GLOBAL SEARCH, Defendant JACOBSEN was authorized to, and routinely did, access GLOBAL SEARCH's computers and database, which contained GLOBAL SEARCH's proprietary information, for the purpose of performing his duties in recruiting and placing candidates.

20.    GLOBAL SEARCH's confidential and proprietary information is of great value to GLOBAL SEARCH and could give any competitor, including Defendant JACOBSEN, who acquired that information an unfair competitive advantage.

21.    On or about January 2, 2008, Defendant JACOBSEN arrived at GLOBAL SEARCH's business offices prior to normal business hours and stayed later than normal business hours. Plaintiff is informed and believes, and thereon alleges, that Defendant JACOBSEN informed another employee of GLOBAL SEARCH, Linda Rutherford, that he had just had a

/ / /

NOON & ASSOCIATES, APC

1 phone line installed at his home, that he was going to download GLOBAL SEARCH's database

2 and then he would not be returning to work at GLOBAL SEARCH.

3    22.    Defendant JACOBSEN did not return to work at GLOBAL SEARCH after

4 January 2, 2008.

5    23.    Plaintiff is informed and believes, and thereon alleges, on January 3, 2008, the day

6 after Defendant JACOBSEN's last day of employment at GLOBAL SEARCH, the packaging for

7 a portable 4 gigabyte Corsair Flash Voyager USB memory stick was found in the wastebasket at

8 Mr. JACOBSEN's desk. Plaintiff is informed and believes, and thereon alleges, that a USB

9 memory stick can be used to copy information from a computer's hard-drive to the memory stick,

10 which can then be transferred from the memory stick to another computer system.

11    24.    Plaintiff retained a forensic computer consultant to examine Defendant

12 JACOBSEN's work computer. The consultant was able to determine that there were two

13 downloads of information from his computer on January 2, 2008.

14    25.    Plaintiff is informed and believes, and thereon alleges, that Defendant JACOBSEN

15 downloaded GLOBAL SEARCH's confidential and proprietary information without GLOBAL

16 SEARCH's consent and is using said information for his own purposes. Plaintiff is further

17 informed and believes, and thereon alleges, that Defendant JACOBSEN has recently contacted

18 several of GLOBAL SEARCH's employer-clients and offered his services in personnel

19 recruitment and placement.

20    26.    GLOBAL SEARCH never gave Defendant JACOBSEN authority to access its

21 computers for the purpose of downloading its confidential and proprietary information for his

22 own personal use without GLOBAL SEARCH's consent. Defendant JACOBSEN's authority to

23 access and/or use the proprietary information and database was limited to the purpose of

24 performing his job duties as an Independent National Associate with GLOBAL SEARCH.

25 / / /

26 / / /

27 / / /

28 / / /

NOON & ASSOCIATES, APC

# FIRST CAUSE OF ACTION

## (Violation of Computer Fraud and Abuse Act, 18 U.S.C. §1030 as against Defendant JACOBSEN)

27.    Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 26 above as if fully set forth herein.

28.    At all times relevant to this Complaint, there was in existence a certain statute, to wit: The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030, *et seq.* The CFAA provides, in relevant part:

> (a) Whoever -
>
> . . .
>
> (5)(A)(iii) ***intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage***; and
>
> (B) by conduct described in clause . . . (iii) of subparagraph (A), caused . . .
>
> (i) loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value . . . .
>
> . . .
>
> (e)(2) the term "protected computer" means a computer -
>
> . . .
>
> (B) which is used in interstate or foreign commerce or communication . . . .
>
> . . .
>
> (g) Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.

[Emphasis added.]

29.    Over the past 18 years, GLOBAL SEARCH has invested substantial time and money developing information and knowledge relating to its employer-clients and the business of recruiting and placing candidates. GLOBAL SEARCH organizes, maintains and accesses this confidential and proprietary information it has developed using a database on its networked office

computers. This information is confidential and proprietary and contains confidential employer-client and candidate information, including but not limited to, identity of candidates, candidate information, identity of employer-clients, personnel needs of employer-clients, fee agreements, pricing, and other sensitive and confidential information.

30.    Plaintiff is informed and believes, and thereon alleges, that Defendant JACOBSEN downloaded GLOBAL SEARCH's confidential and proprietary information without GLOBAL SEARCH's consent and is using said information for his own purposes. Plaintiff is further informed and believes, and thereon alleges, that Defendant JACOBSEN has recently contacted several of GLOBAL SEARCH's employer-clients and offered his services in personnel recruitment and placement.

31.    At the time of Defendant JACOBSEN's improper activities as described above, Defendant JACOBSEN was not authorized by GLOBAL SEARCH to download the computerized information onto a USB memory stick or any other medium for any use other than for legitimate company business purposes.

32.    Through these actions, Defendant JACOBSEN has intentionally accessed GLOBAL SEARCH's computer system and database without authorization to obtain information from GLOBAL SEARCH's computers in violation of 18 U.S.C. §1030(a)(5)(A)(iii).

33.    As a proximate result of Defendant JACOBSEN's conduct as alleged above, GLOBAL SEARCH has suffered damages or loss, in an amount to be proven at trial, aggregating at least $5,000.00.

34.    Moreover, because its remedy at law may be inadequate or incomplete, GLOBAL SEARCH also seeks injunctive relief to recover and protect its information, its goodwill, and other legitimate business interests. The injury to GLOBAL SEARCH is immediate and irreparable. Therefore, GLOBAL SEARCH seeks injunctive relief as follows:

(a)    That Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be temporarily, preliminarily and permanently enjoined from using or disclosing any confidential or proprietary information that Defendant JACOBSEN obtained from GLOBAL SEARCH;

1       (b)     That Defendant JACOBSEN, his officers, agents, servants, employees, and

2  attorneys and all parties in active concert or participation with him be enjoined and ordered to

3  return to GLOBAL SEARCH all originals and all copies of files, data, and information removed

4  from GLOBAL SEARCH, including, but not limited to, the confidential and proprietary

5  information and database that Defendant JACOBSEN downloaded;

6       (c)     That because the information downloaded from GLOBAL SEARCH's

7  computers by Defendant JACOBSEN was in an electronic format that can be quickly and easily

8  disseminated to a large number of entities, perfectly copied, uploaded onto other computers, and

9  forwarded to other individuals who can further utilize and disseminate the information, Defendant

10  JACOBSEN be ordered immediately to preserve all discs and electronic storage devices in his

11  possession, custody and control to which he had access, that Defendant JACOBSEN must turn

12  over to a third-party investigator representative of GLOBAL SEARCH all electronic storage

13  media in his possession, custody or control, including but not limited to, discs, and hard drives

14  accessible to Defendant JACOBSEN on which GLOBAL SEARCH's information may reside and

15  that GLOBAL SEARCH be permitted to image and analyze said media and devices to recover

16  GLOBAL SEARCH's confidential and proprietary information; and

17       (d)     That Defendant JACOBSEN be enjoined and ordered to provide a sworn

18  statement and accounting of the whereabouts of all files, data, and information removed from

19  GLOBAL SEARCH's computers.

20                      **SECOND CAUSE OF ACTION**

21  **(Violation of California *Penal Code* Section502(c)(2) as Against Defendant JACOBSEN)**

22      35.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 34

23  above as if fully set forth herein.

24      36.     At all times relevant to this Complaint, there was in existence a certain statute, to

25  wit: California *Penal Code* section 502, *et seq.*, which provides in relevant part:

26       (c)    . . . any person who commits any of the following
             acts is guilty of a public offense:

27         . . .

28    / / /

NOON & ASSOCIATES, APC

NOON & ASSOCIATES, APC

(2)  *Knowingly accesses and without permission takes,*
*copies, or makes use of any data from a computer,*
*computer system, or computer network, or takes or copies*
*any supporting documentation, whether existing or*
*residing internal or external to a computer, computer*
*system, or computer network.*

. . .

(e)(1)  In addition to any other civil remedy available, the
owner or lessee of the computer, computer system,
computer network, computer program, or data who suffers
damage or loss by reason of a violation of any of the
provisions of subdivision (c) may bring a civil action against
the violator for compensatory damages and injunctive relief
or other equitable relief. . . .

(2)    In any action brought pursuant to this subdivision
the court may award reasonable attorneys' fees.

. . .

(4)    In any action brought pursuant to this subdivision
for a willful violation of the provisions of subdivision (c),
where it has been proved by clear and convincing evidence
that a defendant has been guilty of oppression, fraud, or
malice . . . the court may additionally award punitive or
exemplary damages.

[Emphasis added.]

37.    Over the past 18 years, GLOBAL SEARCH has invested substantial time and
money developing information and knowledge relating to its employer-clients and the business of
recruiting and placing candidates.  GLOBAL SEARCH organizes, maintains and accesses this
confidential and proprietary information it has developed using a database on its networked office
computers.  This information is confidential and proprietary and contains confidential employer-
client and candidate information, including but not limited to, identity of candidates, candidate
information, identity of employer-clients, personnel needs of employer-clients, fee agreements,
pricing, and other sensitive and confidential information.

38.    Plaintiff is informed and believes, and thereon alleges, that Defendant JACOBSEN
downloaded GLOBAL SEARCH's confidential and proprietary information without GLOBAL
SEARCH's consent and is using said information for his own purposes.  Plaintiff is further
informed and believes, and thereon alleges, that Defendant JACOBSEN has recently contacted

several of GLOBAL SEARCH's employer-clients and offered his services in personnel recruitment and placement.

39.    At the time of Defendant JACOBSEN's improper activities as described above, Defendant JACOBSEN was not authorized by GLOBAL SEARCH to download the computerized information onto a USB memory stick or any other medium for any use other than for legitimate company business purposes.

40.    Through these actions, Defendant JACOBSEN has intentionally accessed GLOBAL SEARCH's computer system and database without authorization to obtain information from GLOBAL SEARCH's computers in violation of California *Penal Code* section 502(c)(2).

41.    As a proximate result of Defendant JACOBSEN's conduct as alleged above, GLOBAL SEARCH has suffered damages or loss, in an amount to be proven at trial.  GLOBAL SEARCH is entitled to recover these damages pursuant to California *Penal Code* section 502(e)(1).

42.    Moreover, because its remedy at law may be inadequate or incomplete, GLOBAL SEARCH also seeks injunctive relief to recover and protect its information, its goodwill, and other legitimate business interests.  The injury to GLOBAL SEARCH is immediate and irreparable.  Therefore, GLOBAL SEARCH seeks injunctive relief as follows:

(a)    That Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be temporarily, preliminarily and permanently enjoined from using or disclosing any confidential or proprietary information that Defendant JACOBSEN obtained from GLOBAL SEARCH;

(b)    That Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be enjoined and ordered to return to GLOBAL SEARCH all originals and all copies of files, data, and information removed from GLOBAL SEARCH, including, but not limited to, the confidential and proprietary information and database that Defendant JACOBSEN downloaded;

(c)    That because the information downloaded from GLOBAL SEARCH's computers by Defendant JACOBSEN was in an electronic format that can be quickly and easily

NOON & ASSOCIATES, APC



disseminated to a large number of entities, perfectly copied, uploaded onto other computers, and forwarded to other individuals who can further utilize and disseminate the information, Defendant JACOBSEN be ordered immediately to preserve all discs and electronic storage devices in his possession, custody and control to which he had access, that Defendant JACOBSEN must turn over to a third-party investigator representative of GLOBAL SEARCH all electronic storage media in his possession, custody or control, including but not limited to, discs, and hard drives accessible to Defendant JACOBSEN on which GLOBAL SEARCH's information may reside and that GLOBAL SEARCH be permitted to image and analyze said media and devices to recover GLOBAL SEARCH's confidential and proprietary information; and

(d)    That Defendant JACOBSEN be enjoined and ordered to provide a sworn statement and accounting of the whereabouts of all files, data, and information removed from GLOBAL SEARCH's computers.

43.    Additionally, as a proximate result of Defendant JACOBSEN's wrongful conduct as alleged above, GLOBAL SEARCH has had to incur attorneys' fees to enforce its rights. Therefore, GLOBAL SEARCH seeks an award of reasonable attorneys' fees pursuant to California *Penal Code* section 502(e)(2).

44.    Furthermore, GLOBAL SEARCH is informed and believes and on that basis alleges that in committing the wrongful conduct as alleged above, Defendant JACOBSEN acted with oppression, fraud and malice, thereby entitling plaintiff to an award of punitive damages pursuant to California *Civil Code* section 3294 and California *Penal Code* section 502(e)(4).

## THIRD CAUSE OF ACTION

**(Unfair Business Practices, California *Business and Professions Code* Section 17200, *et seq.*, as Against All Defendants)**

45.    Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 44 above as if fully set forth herein.

46.    California *Business and Professions Code* section 17200 provides that unfair competition shall mean and include "all unlawful, unfair of fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

NOON & ASSOCIATES, APC

47.    Defendant JACOBSEN has intentionally accessed GLOBAL SEARCH's computer system and database without authorization to obtain information from GLOBAL SEARCH's computers in violation of 18 U.S.C. §1330 and California *Penal Code* section 502(c)(2).

48.    The activities described in paragraphs 1 through 47 above constitute unlawful, unfair, deceptive or fraudulent business practices by Defendant JACOBSEN under California *Business and Professions Code* section 17200, *et seq.*

49.    GLOBAL SEARCH alleges that it has already suffered detriment as a proximate result of the foregoing unlawful and unfair business practices committed by Defendant JACOBSEN.  Therefore, GLOBAL SEARCH is entitled to restitution of any and all remuneration or property that Defendant JACOBSEN has acquired by means of such unlawful and unfair business practices.

50.    Moreover, because its remedy at law may be inadequate or incomplete, GLOBAL SEARCH also seeks injunctive relief to recover and protect its information, its goodwill, and other legitimate business interests.  The injury to GLOBAL SEARCH is immediate and irreparable.  Therefore, GLOBAL SEARCH seeks injunctive relief as follows:

(a)    That Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be temporarily, preliminarily and permanently enjoined from using or disclosing any confidential or proprietary information that Defendant JACOBSEN obtained from GLOBAL SEARCH;

(b)    That Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be enjoined and ordered to return to GLOBAL SEARCH all originals and all copies of files, data, and information removed from GLOBAL SEARCH, including, but not limited to, the confidential and proprietary information and database that Defendant JACOBSEN downloaded;

(c)    That because the information downloaded from GLOBAL SEARCH's computers by Defendant JACOBSEN was in an electronic format that can be quickly and easily disseminated to a large number of entities, perfectly copied, uploaded onto other computers, and forwarded to other individuals who can further utilize and disseminate the information, Defendant

NOON & ASSOCIATES, APC

JACOBSEN be ordered immediately to preserve all discs, memory sticks and electronic storage devices in his possession, custody and control to which he had access, that Defendant JACOBSEN must turn over to a third-party investigator representative of GLOBAL SEARCH all electronic storage media in his possession, custody or control, including but not limited to, discs, and hard drives accessible to Defendant JACOBSEN on which GLOBAL SEARCH's information may reside and that GLOBAL SEARCH be permitted to image and analyze said media and devices to recover GLOBAL SEARCH's confidential and proprietary information;

(d)     That Defendant JACOBSEN be enjoined and ordered to provide a sworn statement and accounting of the whereabouts of all files, data, and information removed from GLOBAL SEARCH's computers; and

(e)     That Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be temporarily, preliminarily and permanently enjoined from engaging in or aiding and abetting conduct violative of California *Business and Professions Code* section 17200.

## **FOURTH CAUSE OF ACTION**

### **(Breach of Written Contract as Against Defendant JACOBSEN)**

51.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 50 above as if fully set forth herein.

52.     Defendant JACOBSEN entered into a written Employment Agreement with GLOBAL SEARCH on or about May 8, 2006.  A true and correct copy of the Employment Agreement, titled Independent National Associate Account Executive Employment Agreement, is attached hereto as **Exhibit "1."**

53.     Pursuant to the provisions set forth above in paragraphs 14 through 17, Defendant JACOBSEN expressly agreed to turn over to GLOBAL SEARCH any confidential or proprietary information (which was specifically defined in the Employment Agreement) and not to take, disclose or disseminate any confidential or proprietary information.

54.     Plaintiff is informed and believes and thereon alleges that Defendant JACOBSEN breached the Employment Agreement by, among other things, downloading GLOBAL

1  SEARCH's confidential and proprietary information without GLOBAL SEARCH's consent and

2  using said information for his own purposes.  Plaintiff is further informed and believes and thereon

3  alleges that Defendant JACOBSEN has recently contacted several of GLOBAL SEARCH's

4  employer-clients and offered his services in personnel recruitment and placement.

5       55.      Section 5(b)(iv) of the Employment Agreement provides:

6            that the Company will suffer material and irreparable
             damage if the INA violates Sections 5 or 6 hereof.  It is
7            hereby agreed that in the event of such breach or an
             apparent danger of such breach by the INA, the Company
8            shall be entitled, *in addition to other such remedies
             available to it, to an immediate injunction to restrain the*
9            *violation of any or all such provisions by the INA*.

10  [Emphasis added.]

11       56.      Section 5(b)(v) of the Employment Agreement further provides:

12           that the actual damages resulting from a breach of Sections
             5 or 6 hereof by the INA will be difficult or impossible to
13           ascertain and that the INA will be, by such violation,
             employing the valuable training and experience afforded to
14           him or her by the Company and will be employing the
             Company's Proprietary Information, that, in the event of
15           such a violation, the INA agrees to pay to the Company,
             upon demand, as liquidated damages, and not as a penalty,
16           in the satisfaction of the claims of the Company for such
             violations and as a payment for the training and experience
17           obtained by the INA from the Company the following:

18           (A)   Two Thousand Five Hundred Dollars ($2,500); plus

19           (B)   "Total Daily Damage," which is the total amount of
             gross profit, (net cash in less compensation payable to the
20           Account Executive . . . earned by the Company during the
             six month period immediately preceding the effective date of
21           termination of this Agreement, or the full period of this
             Agreement if it is not in force for at least six (6) months,
22           divided by the number of business days worked by the INA
             during said period, and multiplied by the number of business
23           days in the period during which the INA engaged in
             activities constituting a breach of sections 5 or 6 hereof;
24           plus

25           (C)   any retainer, commission, compensation, gratuity or
             other emolument of any kind received by or promised to
26           INA from any person or entity pertaining or relating to any
             violation of Sections 5 or 6 hereof; plus

27

28  ///

NOON & ASSOCIATES, APC

(D)    any fee paid for services rendered in violation of Sections 5 or 6 hereof, whether paid to the INA or to any other person, firm or entity . . .

57.    Section 8 of the Employment Agreement further provides:

The INA agrees to indemnify and save the Company harmless from any and all manner of suits, claims or demands arising out of the INA's actions, breach or apparent breach of this Agreement and to reimburse the Company for any and all costs, damages and expenses, including reasonable attorneys' fees, which the Company pays or becomes obligated to pay by reason of such activities, breach or apparent breach.

58.    As a proximate result of Defendant JACOBSEN's conduct as alleged above and resulting breach of the Employment Agreement, GLOBAL SEARCH is entitled to recover liquidated damages as set forth in section 5(b)(v) of the Employment Agreement, set forth above.

59.    Moreover, pursuant to section 5(b)(iv) of the Employment Agreement, set forth above, and because its remedy at law may be inadequate or incomplete, GLOBAL SEARCH also seeks injunctive relief to recover and protect its information, its goodwill, and other legitimate business interests.  The injury to GLOBAL SEARCH is immediate and irreparable.  Therefore, GLOBAL SEARCH seeks injunctive relief as follows:

(a)    That Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be temporarily, preliminarily and permanently enjoined from using or disclosing any confidential or proprietary information that Defendant JACOBSEN obtained from GLOBAL SEARCH;

(b)    That Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be enjoined and ordered to return to GLOBAL SEARCH all originals and all copies of files, data, and information removed from GLOBAL SEARCH, including, but not limited to, the confidential and proprietary information and database that Defendant JACOBSEN downloaded;

(c)    That because the information downloaded from GLOBAL SEARCH's computers by Defendant JACOBSEN was in an electronic format that can be quickly and easily disseminated to a large number of entities, perfectly copied, uploaded onto other computers, and

forwarded to other individuals who can further utilize and disseminate the information, Defendant

JACOBSEN be ordered immediately to preserve all discs and electronic storage devices in his

possession, custody and control to which he had access, that Defendant JACOBSEN must turn

over to a third-party investigator representative of GLOBAL SEARCH all electronic storage

media in his possession, custody or control, including but not limited to, discs, and hard drives

accessible to Defendant JACOBSEN on which GLOBAL SEARCH's information may reside and

that GLOBAL SEARCH be permitted to image and analyze said media and devices to recover

GLOBAL SEARCH's confidential and proprietary information; and

   (d)    That Defendant JACOBSEN be enjoined and ordered to provide a sworn

statement and accounting of the whereabouts of all files, data, and information removed from

GLOBAL SEARCH's computers.

   60.    Additionally, as a proximate result of Defendant JACOBSEN's wrongful conduct

and resulting breach of the Employment Agreement as alleged above, GLOBAL SEARCH has

had to incur attorneys' fees to enforce its rights.  Therefore, GLOBAL SEARCH seeks an award

of reasonable attorneys' fees pursuant to section 8 of the Employment Agreement.

## FIFTH CAUSE OF ACTION

### (Conversion as Against All Defendants)

   61.    Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 60

above as if fully set forth herein.

   62.    GLOBAL SEARCH is, and at all relevant times herein, was the owner and in

possession of all electronic documents and confidential and proprietary information that were

maintained and/or stored on GLOBAL SEARCH's computers and computer system, as well as

any hard copies of such documents.

   63.    Plaintiff is informed and believes and thereon alleges that Defendant JACOBSEN

downloaded GLOBAL SEARCH's confidential and proprietary information without GLOBAL

SEARCH's knowledge and consent, thereby unlawfully converting GLOBAL SEARCH's

property.

/ / /

NOON & ASSOCIATES, APC

64.    Unless ordered to return or destroy all copies or reproductions of GLOBAL SEARCH's confidential and proprietary information, Defendant JACOBSEN will continue to possess/and or use GLOBAL SEARCH's property.

65.    As a proximate result of Defendant JACOBSEN's conduct as alleged above, GLOBAL SEARCH has suffered damages or loss, in an amount to be proven at trial.

66.    Furthermore, GLOBAL SEARCH is informed and believes and on that basis alleges that in committing the wrongful conduct as alleged above, Defendant JACOBSEN acted with oppression, fraud and malice, thereby entitling plaintiff to an award of punitive damages pursuant to California *Civil Code* section 3294.

## SIXTH CAUSE OF ACTION

### (Declaratory and Injunctive Relief as Against All Defendants)

67.    Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 66 above as if fully set forth herein.

68.    An actual controversy has arisen and now exists between plaintiff and defendants concerning their respective rights and duties in that plaintiff contends that defendants, and each of them, downloaded GLOBAL SEARCH's confidential and proprietary information without GLOBAL SEARCH's knowledge and consent and is using said information to gain a competitive advantage over plaintiff, whereas defendants dispute these contentions.

69.    Further, in regard to the referenced present and actual controversy, plaintiff contends, and defendants dispute, that Defendant JACOBSEN breached the Employment Agreement with GLOBAL SEARCH.

70.    Plaintiff desires a judicial determination of its rights and duties under the Employment Agreement and a determination that Defendant JACOBSEN breached said Employment Agreement by downloading GLOBAL SEARCH's confidential and proprietary information without GLOBAL SEARCH's knowledge and consent and using said information to gain a competitive advantage over plaintiff.

/ / /

/ / /

NOON & ASSOCIATES, APC

71.    A judicial declaration is necessary and appropriate at this time under the circumstances so that plaintiff and defendants may ascertain their rights and duties with respect to the Employment Agreement.

**WHEREFORE**, plaintiff prays for judgment against defendants and each of them as follows:

### AS TO THE FIRST CAUSE OF ACTION

1.    For general and special damages in an amount to be proven at trial;

2.    For costs of suit herein;

3.    For prejudgment interest in accord with applicable California law;

4.    For an order that:

(a)    Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be temporarily, preliminarily and permanently enjoined from using or disclosing any confidential or proprietary information that Defendant JACOBSEN obtained from GLOBAL SEARCH;

(b)    Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be enjoined and ordered to return to GLOBAL SEARCH all originals and all copies of files, data, and information removed from GLOBAL SEARCH, including, but not limited to, the confidential and proprietary information and database that Defendant JACOBSEN downloaded; .

(c)    Because the information downloaded from GLOBAL SEARCH's computers by Defendant JACOBSEN was in an electronic format that can be quickly and easily disseminated to a large number of entities, perfectly copied, uploaded onto other computers, and forwarded to other individuals who can further utilize and disseminate the information, Defendant JACOBSEN be ordered immediately to preserve all discs and electronic storage devices in his possession, custody and control to which he had access, that Defendant JACOBSEN must turn over to a third-party investigator representative of GLOBAL SEARCH all electronic storage media in his possession, custody or control, including but not limited to, discs, and hard drives accessible to Defendant JACOBSEN on which GLOBAL SEARCH's information may reside and

NOON & ASSOCIATES, APC

1  that GLOBAL SEARCH be permitted to image and analyze said media and devices to recover

2  GLOBAL SEARCH's confidential and proprietary information; and

3          (d)    Defendant JACOBSEN be enjoined and ordered to provide a sworn

4  statement and accounting of the whereabouts of all files, data, and information removed from

5  GLOBAL SEARCH's computers; and

6          5.    For such other and further relief as the Court may deem just and proper.

7          **AS TO THE SECOND CAUSE OF ACTION**

8          1.    For general and special damages in an amount to be proven at trial;

9          2.    For costs of suit herein;

10         3.    For prejudgment interest in accord with applicable California law;

11         4.    For an order that:

12         (a)    Defendant JACOBSEN, his officers, agents, servants, employees, and

13  attorneys and all parties in active concert or participation with him be temporarily, preliminarily

14  and permanently enjoined from using or disclosing any confidential or proprietary information that

15  Defendant JACOBSEN obtained from GLOBAL SEARCH;

16         (b)    Defendant JACOBSEN, his officers, agents, servants, employees, and

17  attorneys and all parties in active concert or participation with him be enjoined and ordered to

18  return to GLOBAL SEARCH all originals and all copies of files, data, and information removed

19  from GLOBAL SEARCH, including, but not limited to, the confidential and proprietary

20  information and database that Defendant JACOBSEN downloaded;

21         (c)    Because the information downloaded from GLOBAL SEARCH's

22  computers by Defendant JACOBSEN was in an electronic format that can be quickly and easily

23  disseminated to a large number of entities, perfectly copied, uploaded onto other computers, and

24  forwarded to other individuals who can further utilize and disseminate the information, Defendant

25  JACOBSEN be ordered immediately to preserve all discs and electronic storage devices in his

26  possession, custody and control to which he had access, that Defendant JACOBSEN must turn

27  over to a third-party investigator representative of GLOBAL SEARCH all electronic storage

28  media in his possession, custody or control, including but not limited to, discs, and hard drives

NOON & ASSOCIATES, APC



accessible to Defendant JACOBSEN on which GLOBAL SEARCH's information may reside and

that GLOBAL SEARCH be permitted to image and analyze said media and devices to recover

GLOBAL SEARCH's confidential and proprietary information; and

> (d)    Defendant JACOBSEN be enjoined and ordered to provide a sworn statement and accounting of the whereabouts of all files, data, and information removed from GLOBAL SEARCH's computers;

5.    For reasonable attorneys' fees;

6.    For punitive or exemplary damages; and

7.    For such other and further relief as the Court may deem just and proper.

**AS TO THE THIRD CAUSE OF ACTION**

1.    For general and special damages in an amount to be proven at trial;

2.    For costs of suit herein;

3.    For prejudgment interest in accord with applicable California law;

4.    For an order that:

> (a)    Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be temporarily, preliminarily and permanently enjoined from using or disclosing any confidential or proprietary information that Defendant JACOBSEN obtained from GLOBAL SEARCH;

> (b)    Defendant JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be enjoined and ordered to return to GLOBAL SEARCH all originals and all copies of files, data, and information removed from GLOBAL SEARCH, including, but not limited to, the confidential and proprietary information and database that Defendant JACOBSEN downloaded;

> (c)    Because the information downloaded from GLOBAL SEARCH's computers by Defendant JACOBSEN was in an electronic format that can be quickly and easily disseminated to a large number of entities, perfectly copied, uploaded onto other computers, and forwarded to other individuals who can further utilize and disseminate the information, Defendant JACOBSEN be ordered immediately to preserve all discs and electronic storage devices in his

NOON & ASSOCIATES, APC

1  possession, custody and control to which he had access, that Defendant JACOBSEN must turn

2  over to a third-party investigator representative of GLOBAL SEARCH all electronic storage

3  media in his possession, custody or control, including but not limited to, discs, and hard drives

4  accessible to Defendant JACOBSEN on which GLOBAL SEARCH's information may reside and

5  that GLOBAL SEARCH be permitted to image and analyze said media and devices to recover

6  GLOBAL SEARCH's confidential and proprietary information; and

7          (d)    Defendant JACOBSEN be enjoined and ordered to provide a sworn

8  statement and accounting of the whereabouts of all files, data, and information removed from

9  GLOBAL SEARCH's computers;

10          (e)    Defendant JACOBSEN, his officers, agents, servants, employees, and

11  attorneys and all parties in active concert or participation with him be temporarily, preliminarily

12  and permanently enjoined from engaging in or aiding and abetting conduct violative of California

13  *Business and Professions Code* section 17200; and

14      5.    For such other and further relief as the Court may deem just and proper.

15  **AS TO THE FOURTH CAUSE OF ACTION**

16      1.    For liquidated damages as set forth in the Employment Agreement;

17      2.    For costs of suit herein;

18      3.    For prejudgment interest in accord with applicable California law;

19      4.    For an order that:

20          (a)    Defendant JACOBSEN, his officers, agents, servants, employees, and

21  attorneys and all parties in active concert or participation with him be temporarily, preliminarily

22  and permanently enjoined from using or disclosing any confidential or proprietary information that

23  Defendant JACOBSEN obtained from GLOBAL SEARCH;

24          (b)    Defendant JACOBSEN, his officers, agents, servants, employees, and

25  attorneys and all parties in active concert or participation with him be enjoined and ordered to

26  return to GLOBAL SEARCH all originals and all copies of files, data, and information removed

27  from GLOBAL SEARCH, including, but not limited to, the confidential and proprietary

28  information and database that Defendant JACOBSEN downloaded;

NOON & ASSOCIATES, APC

(c)    Because the information downloaded from GLOBAL SEARCH's computers by Defendant JACOBSEN was in an electronic format that can be quickly and easily disseminated to a large number of entities, perfectly copied, uploaded onto other computers, and forwarded to other individuals who can further utilize and disseminate the information, Defendant JACOBSEN be ordered immediately to preserve all discs and electronic storage devices in his possession, custody and control to which he had access, that Defendant JACOBSEN must turn over to a third-party investigator representative of GLOBAL SEARCH all electronic storage media in his possession, custody or control, including but not limited to, discs, and hard drives accessible to Defendant JACOBSEN on which GLOBAL SEARCH's information may reside and that GLOBAL SEARCH be permitted to image and analyze said media and devices to recover GLOBAL SEARCH's confidential and proprietary information; and

(d)    Defendant JACOBSEN be enjoined and ordered to provide a sworn statement and accounting of the whereabouts of all files, data, and information removed from GLOBAL SEARCH's computers;

5.    For reasonable attorneys' fees; and

6.    For such other and further relief as the Court may deem just and proper.

**AS TO THE FIFTH CAUSE OF ACTION**

1.    For general and special damages in an amount to be proven at trial;

2.    For costs of suit herein;

3.    For prejudgment interest in accord with applicable California law;

4.    For punitive or exemplary damages; and

5.    For such other and further relief as the Court may deem just and proper.

**AS TO THE SIXTH CAUSE OF ACTION**

1.    A judicial declaration, adjudicating the respective parties' rights and duties in respect to the contentions raised herein;

/ / /

/ / /

/ / /

2.    Costs of suit herein; and

3.    Such other and further relief as the Court may deem just and proper.

Dated: March  6 , 2008                          NOON & ASSOCIATES, APC


                                        By:  _____
                                              Timothy S. Noon
                                              Kathy J. Steinman
                                              Attorneys for Plaintiff GLOBAL
                                              TECHNICAL SEARCH, INC. dba
                                              GLOBAL SEARCH

## *GLOBAL SEARCH V. LELAND JACOBSEN, ET AL.*

### INDEX TO EXHIBITS
### TO COMPLAINT FOR COMPUTER FRAUD

EXHIBIT 1                    -          Pages 25 - 29

**EXHIBIT 1**

FR STD 4-83

_ *INDEPENDENT NATIONAL ASSOCIATE -*

# ACCOUNT EXECUTIVE EMPLOYMENT AGREEMENT

THIS AGREEMENT is made and entered into in the City of ___CARLSBAD___

State of ___CALIF___ on this ___8th___ day of ___MAY___ ___2006___ by and between
___GLOBAL TECHNICAL SEARCH, INC___ (INA) (the "Company"),
and ___TED JACOBSEN___ (the "Account Executive");
(IDEPENDENT NAT'L ASSOC.)

## RECITALS

A. The Company is engaged in the personnel placement service business and, as such, carries on the business of obtaining positions of employment for candidates and searching out candidates to become employees for employer-clients.

B. The Company has developed valuable confidential techniques and valuable proprietary and confidential forms and methods.

C. The ~~Account Executive~~ *INA* desires to learn said valuable techniques and employ said valuable forms and methods in earning income as an ~~account executive~~ *INA* in the employ of the Company.

D. The ~~Account Executive~~ *INA* acknowledges that he or she does not presently possess sufficient knowledge of the techniques, forms and methods of the Company to proficiently operate as an ~~account executive~~ in the manner contemplated by both himself or herself and the Company.

E. Both parties hereto acknowledge that the position of an account executive is one of considerable responsibility and requiring such considerable training, relationships and contacts with candidates and employer-clients and experience that it will take a substantial amount of the Company's time to replace an ~~account executive~~ who has received such training, relationships and contacts with candidates and employer-clients, and experience as are typically afforded by the Company.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and the mutual covenants of the parties herein set forth, it is hereby agreed:

1. THE COMPANY.
   (a) The Company employs the ~~Account Executive~~ *INA* in the capacity of an ~~account executive~~ *INA* for the Company's personnel placement service business. The ~~Account Executive~~ shall commence his or her employment hereunder on the ___8th___ day of ___MAY___ ___2006___ at the Company's office situated at
   (complete address) ___1946 KELLOGG AVE___
   ___Suite A___
   ___CARLSBAD, CA. 92008___
   _____ (the "OFFICE").

   (b) The Company agrees to assume all of the usual and ordinary expenses involved in providing the ~~Account Executive~~ *INA* ~~tive~~ with office and working conditions appropriate for the conduct of his or her duties as an ~~account executive~~. *INA*

   (c) The position of an ~~account executive~~ *INA* is of such importance to the success and profitability of the Company that the Company agrees to train and furnish the ~~Account Executive~~ with the Company's confidential and proprietary techniques, forms and methods for the ~~Account Executive's~~ use in his or her employment with the Company so that the ~~Account Executive~~ may become proficient as an ~~account executive~~.

2. THE ~~ACCOUNT EXECUTIVE~~. *INDEPENDENT NATIONAL ASSOCIATE (INA)*
   (a) The ~~Account Executive~~ accepts the position of employment with the Company as an ~~account executive~~ and the ~~Account Executive~~ *INA :*
   
   (i) agrees to expend his or her full time and best efforts toward obtaining positions of employment for candidates of the Company; searching out candidates to become employees for employer-clients for whom the Company has agreed to furnish such services; searching out employers to become employer-clients of the Company and such other duties and responsibilities that the Company may, from time to time, assign to the ~~Account Executive~~; *INA*

   (ii) represents and warrants that he or she is not bound by any restrictive covenant which would prevent or restrict the ~~Account Executive~~, in any manner whatsoever, from performing his or her duties and carrying out his or her responsibilities as an ~~account executive~~ for the Company's personnel placement service business;

   (iii) agrees that he or she shall not engage in any other business activities in competition with the Company's personnel placement service business;

   (iv) agrees, subject to the directions of the Company, to conduct his or her business activities hereunder in accordance with the directives, policies and instructions of the Company in such a manner as to maintain and increase the Company's ethical, moral and professional standards and to maintain and increase the good will and reputation of the Company;

   (v) specifically agrees and acknowledges that he or she shall have no authority to enter into any type of contract, agreement or arrangement for or on behalf of the Company, ~~account executive~~ or otherwise which might subject the Company to any claims, liability or cause of action, except those made in the normal course of his or her duties as an account executive and made in accordance with the Company's policies and directives;

Exhibit 1 — Page 25

—1—

(vi) agrees to seek out candidates for positions of employment, interview applicants for positions of employment, contact employer-clients to ascertain their personnel requirements, to assist employer-clients in fulfilling their personnel requirements and pursue such other efforts in order to obtain positions of employment for candidates and to provide employer-clients with qualified employees in a confidential nature and in accordance with the Company's procedures, policies, directives and instructions;

(vii) acknowledges that the duties of an ~~Account Executive~~ *INA* are confidential, sensitive and professional in nature, and that they require the Account Executive to function in a discretionary executive capacity with regard to screening candidates and advising candidates, and employer-clients, assisting them in negotiations, and otherwise developing and managing the areas of the Company's business for which the ~~Account Executive~~ is assigned responsibility;

(viii) agrees to pay over to the Company any retainer, compensation, commission, gratuity or other emolument of any kind received during the term of this Agreement from any person, employer-client or candidate in connection with the placement of any person for employment, regardless of whether such placement falls within the scope of the ~~Account Executive's~~ ordinary business activities; and

(ix) acknowledges that he or she has been advised of and is cognizant of the Company's longstanding non-discriminatory policies and, in connection therewith, agrees that;

    (A) the screening and referral of candidates for positions of employment shall only be based on said person's qualifications and such person's race, creed, color, religion, sex, age, national origin, marital status, physical handicap, etc. shall not be a factor;

    (B) he or she will not accept a job order from any employer-client which contains any discriminatory provisions unless the employer-client can provide satisfactory evidence to the Company that such discriminatory provision is a bona fide occupational qualification; and

    (C) he or she will not, in any manner whatsoever, code any forms that would in any way indicate race, creed, color, religion, sex, age, national origin, marital status, physical handicap, etc.

3. COMPENSATION.

The ~~Account Executive's~~ *INA* compensation for the services to be rendered under this Agreement shall be pursuant to the terms, conditions and covenants contained in Exhibit "A" attached hereto and incorporated herein.

4. DEFINITIONS: Trade Secrets.

The parties hereto agree that:

    (a) the term "personnel placement service business" as used in this Agreement shall mean those activities pertaining to placement, recruiting, counseling, testing, resume writing and management consultant functions, finding positions of employment for persons, securing personnel for employer-clients and other similar functions, activities or business;

    (b) the occupation "account executive" as used in this Agreement means those activities of the ~~Account Executive~~ when engaged, directly or indirectly, in the personnel placement service business, for his or her own benefit or for the benefit of or on behalf of any other person, as an account executive, counselor, recruiter, assistant manager, manager, owner, partner, associate, shareholder, director, officer, agent, investor, trustee or so engaged in any other similar function or capacity;

    (c) the term "employer-client," as used in this Agreement shall mean an employer, customer, or client including the personnel of such employer, customer or client who has given the Company a job order in person, by telephone, in writing or otherwise and shall include any employer, customer, or client the Company has been soliciting for job orders;

    (d) the term "candidate" as used in this Agreement shall mean any individual who, for purposes of finding a position of employment, has provided the Company with his or her job history information, job history resume, or an application containing job history and other related information in person, by telephone, in writing or otherwise, whether or not the Company actually obtains a position of employment for said individual;

    (e) the term "customer list" as used in this Agreement is not limited to a physical writing or compilation of any number of the names of the Company's customers, employer-clients and candidates and/or the pertinent information relating to them but also includes any and all information whatsoever regarding them whether or not such compilation is mental or physical;

    (f) the term "Company's Proprietary Information" as used in this Agreement means the Company's confidential proprietary information constituting the trade secrets of the Company, including but not limited to information of a technical and business nature pertaining to the Company's personnel placement service business, the identity of candidates, the personal information supplied by candidates, information concerning the identy of employer-clients and their personnel, the personnel needs and requirements of employer-clients and terms and conditions under which the Company deals with employer-clients, other customer lists, training manuals, training tapes, computer programs, films, video cassettes, records, forms, unique techniques, methods and procedures for the operation of a personnel placement service business, the terms and conditions under which the Company deals with other companies engaged in the personnel placement service business or similar types of businesses, its contracts with such companies, its suppliers, etc.;

    (g) all ideas, trade names, service marks, slogans, forms, records, customer lists, procedures, etc. used or owned by and/or licensed to the Company, improved upon, developed or conceived by the ~~Account Executive~~, alone or with others, during the term of this Agreement, whether or not during working hours, that are within the scope of the Company's personnel placement service business, are the exclusive and confidential property of the Company.

    (h) the parties agree that the Company's Proprietary Information may also be trade secrets and by the use of the term "Company's Proprietary Information," the Company does not intend to negate the status of its trade secrets that may be included in the information referred to in Subsection 4(f) and (g) herein.

5. RESTRICTIVE COVENANTS.

In further consideration of the ~~Account Executive's~~ *INA* employment hereunder, the parties hereto agree to the following:

    (a) that during the term of this Agreement, the ~~Account Executive~~ *INA* shall not engage in the activities of an account executive, or any other similar function or capacity, in the personnel placement service business for his or her own benefit or for the benefit of or on behalf of any other person. The ~~Account Executive~~ further agrees to deliver promptly to the Company, the Company's Proprietary Information at any time the Company requests same from the ~~Account Executive~~ and the ~~Account Executive~~ agrees not to retain any copies thereof.

    (b) in the event that this Agreement is terminated for any reason whatsoever, voluntarily or involuntarily, the ~~Account Executive~~ *INA* recognizes that it is necessary to safeguard and protect the Company's business and that it will take considerable time for the Company to hire and train an ~~account executive~~ to replace the ~~Account Executive~~ and therefore, the ~~Account Executive~~ *INA* agrees to the following, notwithstanding anything herein contained to the contrary:

Exhibit 1 – Page 26

— 2 —

(i) that upon termination of this Agreement, the ~~Account Executive~~ *INA* shall immediately turn over the Company the Company's Proprietary Information, including but without limiting the generality of the foregoing, any and all lists, documents, or other types of records and any written, typed or printed materials identifying the candidates of the Company or identifying the employer-clients or personnel of employer-clients together with any and all data involving advertising techniques, candidate processing, forms, correspondence or data in any way involving the Company's techniques, training manuals, training tapes, video cassettes, computer programs, materials, programs, methods or contacts, and that the ~~Account Executive~~ shall have no right to retain any copies of the foregoing for any reason whatsoever after termination of his or her employment hereunder without the express written consent of the Company;

(ii) that for a period of one (1) year following the effective date of termination of this Agreement, the ~~Account Executive~~ *INA* shall not, directly or indirectly, in any manner whatsoever, in the course of the personnel placement service business, communicate with or provide services to, any candidate or employer-client with whom the ~~Account Executive~~ had contact with, knowledge of, or access to during the twelve (12) months immediately preceding the effective date of termination of this Agreement, no matter where within the United States the ~~Account Executive~~ or candidate, or employer-client is located, and shall not assist any other person other than the Company in so doing;

(iii) that for a period of one (1) year following the effective date of termination of this Agreement, the ~~Account Executive~~ *INA*.

    (A) shall not engage in the activities of an account executive, manager, owner, partner or any other similar function or capacity in the personnel placement service business within the geographical areas consisting of the area within a fifty (50) mile radius of the OFFICE and also consisting of the Standard Metropolitan Statistical Area, if any, in which said office is then located, for his or her own benefit or for the benefit of or on behalf of any other person; and

    (B) shall not compete with the Company in the personnel placement service business in any manner whatsoever within the geographical areas referred to in Subsection 5(b)(iii)(A) hereof, including but not limited to contacting or soliciting any person, in any manner whatsoever, pertaining to the personnel placement service business; provided, however, if the effective date of termination of this Agreement is within six (6) months of date referred to in Subsection 1(a) above, then the foregoing one (1) year time period of this subsection 5(b)(iii) shall be reduced to a six (6) month time period;

(iv) that the Company will suffer material and irreparable damage if the ~~Account Executive~~ *INA* violates Sections 5 or 6 hereof. It is hereby agreed that in the event of such breach or an apparent danger of such breach by the ~~Account Executive~~, the Company shall be entitled, in addition to such other remedies available to it, to an immediate injunction to restrain the violation of any or all such provisions by the ~~Account Executive~~;

(v) that the actual damages resulting from a breach of Sections 5 or 6 hereof by the ~~Account Executive~~ *INA* will be difficult or impossible to ascertain and that the ~~Account Executive~~ will be, by such violation, employing the valuable training and experience afforded to him or her by the Company and will be employing the Company's Proprietary Information. that, in the event of such a violation, the ~~Account Executive~~ *INA* agrees to pay to the Company, upon demand, as liquidated damages, and not as a penalty, in the satisfaction of the claims of the Company for such violations and as a payment for the training and experience obtained by the *INA* ~~Account Executive~~ from the Company, the following:

    (A) Two Thousand Five Hundred Dollars ($2,500); plus

    (B) "Total Daily Damage," which is the total amount of gross profit, (net cash in less compensation payable to the Account Executive, both as defined in Exhibit "A" to this Agreement) earned by the Company during the six (6) month period immediately preceding the effective date of termination of this Agreement, or the full period of this Agreement if it is not in force for at least six (6) months, divided by the number of business days worked by the ~~Account Executive~~ during said period, and multiplied by the number of business days in the period during which the ~~Account Executive~~ engaged in activities constituting a breach of sections 5 or 6 hereof; plus

    (C) any retainer, commission, compensation, gratuity or other emolument of any kind received by or promised to the ~~Account Executive~~ *INA* from any person or entity pertaining or relating to any violation of Sections 5 or 6 hereof; plus

    (D) any fee paid for services rendered in violation of Sections 5 or 6 hereof, whether paid to the ~~Account Executive~~ *INA* or to any other person, firm or entity;

(vi) that if the ~~Account Executive~~ *INA* accepts employment with an employer-client, the ~~Account Executive~~ *INA* shall be jointly and severally liable with the employer-client for the full placement fee which would be payable if a candidate had been hired.

It is agreed that this provision for liquidated damages is fair and equitable and that the amounts set forth above are reasonable under the circumstances.

The parties hereto further agree that the one (1) year and the six (6) month time periods referred to in Subsections 5 (b) (ii) and 5 (b) (iii) hereof shall be extended to include (a) any period of time in which the ~~Account Executive~~ is or was, engaged in activities constituting a breach of this Agreement and (b) any period of time required to litigate activities of the ~~Account Executive~~ constituting a breach or apparent breach of this Agreement.

6. **COMPANY'S PROPRIETARY INFORMATION.**

    (a) It is understood and agreed that, in the course of his or her employment hereunder and through the ~~Account Executive~~'s *INA* activities for and on behalf of the Company, the ~~Account Executive~~ will receive, deal with and have access to the Company's Proprietary Information and that the ~~Account Executive~~ holds the Company's Proprietary Information in trust and confidence for the Company.

    (b) The ~~Account Executive~~ *INA* agrees that he or she shall not, during the term of this Agreement, or thereafter in any fashion, form or manner, directly or indirectly, retain, make copies of, divulge, disclose or communicate to any person, in any manner whatsoever, except when necessary or required in the normal course of the ~~Account Executive~~'s employment hereunder and for the benefit of the Company or with the express written consent of the Company:

        (i) the Company's Proprietary Information; or

        (ii) any information of any kind, nature or description whatsoever concerning any matters affecting or relating to the Company's personnel placement service business and the Company's personnel placement service.

7. The parties hereto further stipulate that, as between them, all of the items referred to in Sections 5 and 6 hereof are important, material and confidential and gravely affect the effective and successful conduct of the business of the Company, its good will and reputation. Any breach or apparent breach of the terms and provisions of Sections 5 and 6 hereof shall constitute a material and irreparable breach of this Agreement and will subject the Company to immeasurable loss of revenue, business opportunities and good-will.

8. **INDEMNIFICATION.**

The ~~Account Executive~~ *INA* agrees to indemnify and save the Company harmless from any and all manner of suits, claims or demands arising out of the ~~Account Executive~~'s activities, breach or apparent breach of this Agreement and to reimburse the Company for any and all costs, damages and expenses, including reasonable attorney's fees, which the Company pays or becomes obligated to pay by reason of such activities, breach or apparent breach.

This Section 8 shall not be construed to void or limit any of the other rights granted to the Company or duties assumed by the ~~Account Executive~~ *INA* pursuant to this Agreement.

—3—

Exhibit 1 - Page 27

**WAIVER and SURVIVAL.**

The failure of the Company to insist upon strict adherence or compliance by the ~~Account Executive~~ **INA** with one or more of the covenants and restrictions contained herein, on one or more occasions, shall not be construed as a waiver, nor shall such course of action deprive the Company of the right to require strict compliance therewith.

10. **TERMINATION.**

This Agreement shall continue in full force and effect and shall govern all transactions of the parties hereto, until terminated by either party. It is agreed that either party shall have the privilege to terminate this Agreement at any time, with or without cause, by delivering verbal or written notice to the other party specifying the effective date of such termination. Except as otherwise provided for herein, all rights and obligations of the parties hereto shall cease as of the effective date specified in the notice of termination.

11. **SEVERABILITY.**

In the event that any portion of this Agreement shall, for any reason, be held invalid or unenforceable, it is agreed that the same shall not affect any other portion of the Agreement, but that the remaining covenants and restrictions or portions hereof shall remain in full force and effect, and that if the invalidity or unenforceability is due to the unreasonableness of the time or geographical area covered by said covenants and restrictions, said covenants and restrictions shall nevertheless be effective for such period of time and for such area as may be determined to be reasonable by a court of competent jurisdiction or by an arbitration tribunal.

12. **APPLICABLE LAW.**

The parties hereto agree that this Agreement shall be governed in all respects by the laws of this State.

13. **ARBITRATION.**

(a) Except as provided in Subsection 13 (b) hereof, all controversies, claims, disputes and matters in question arising out or, or relating to, this Agreement or the breach thereof, or the relations between the parties, shall be decided by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The parties agree that the arbitration shall take place in the city where the OFFICE is then situated, and shall be governed by the law of this State. The award rendered by the arbitrator shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof, including a federal district court, pursuant to the Federal Arbitration Act. The arbitrator may grant the Company injunctive relief, including mandatory injunctive relief, in order to protect the rights of the Company pursuant to sections 5, 6, and 7 hereof, but shall not be limited to such relief. The parties specifically agree that this provision for arbitration shall not preclude the Company from seeking injunctive relief in a court in order to protect its rights under said sections 5, 6, and 7, nor shall the filing of such an action constitute waiver by the Company of its right to seek arbitration hereunder. In preparation for the arbitration hearing, each party may utilize all methods of discovery authorized by the procedural rules and statutes of this State, and may enforce the right to such discovery in the manner provided by said rules and statutes and/or by the arbitration law of this state.

(b) The right of the Company to terminate this agreement shall not be subject to arbitration.

14. **ENTIRE AGREEMENT.**

This Agreement with an Exhibit "A" attached contains the entire Agreement between the parties hereto and there are no representations, inducements, arrangements, promises, or agreements outstanding between them either oral or in writing, other than those herein contained. Any and all employment agreements that the ~~Account Executive~~ may have had from time to time with the Company or with any of its affiliates or subsidiaries are hereby superseded by this Agreement. No provision of this Agreement shall be changed or modified except in writing and executed by the parties hereto.

15. **SUCCESSORS and ASSIGNS.**

This Agreement shall be binding upon and shall inure to the benefit of the Company and its successors, assigns, heirs and personal representatives and shall be binding upon and shall inure to the benefit of the ~~Account Executive~~ **INA** and his or her heirs and personal representatives. The ~~Account Executive's~~ **INA** interests hereunder are non-assignable.

16. **NOTICES.**

Except as provided for in Section 10 above, all notices shall be given in writing by registered or certified mail addressed to the Company at the address first above written and to the ~~Account Executive~~ at the address hereinafter written. Either party may designate a different address by written notice to the other party. If notice is hand delivered, the recipient must acknowledge receipt of same on a copy of said notice provided for by the sender. Notices to the Company which are hand delivered can only be received and acknowledged by the Manager of the office in which the ~~Account Executive~~ is working at that time.

17. **CAPTIONS and TERMINOLOGY.**

The captions to each section herein are used solely for convenience and are not a part of this Agreement, or to be used in interpreting it. Whenever the singular number is used in this Agreement and when required by the context, the same shall include the plural. The masculine gender shall include the feminine as well as the neuter gender. The word "person" shall include an individual, candidate, partnership, company, employer, employer-client, corporation, firm, association, other entity or otherwise.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in multiple counterparts with each counterpart being deemed an original, and the counterparts together shall constitute one and the same instrument, as of the day and year first above written. The ~~Account Executive~~ **INA** hereby acknowledges receipt of an executed copy of this Agreement.

PLEASE PRINT OR TYPE THE FOLLOWING:

_Ted Jacobsen_
Account Executive's full name

_27735 Mtn. Meadows Rd #16_
Home Address

_Escondido CA 92026_
City         State         Zip

_760 751-4055_
Residence Telephone

The ~~Account Executive~~ **INA**, by his or her signature hereto, acknowledges that he or she has had adequate opportunity to review the foregoing Agreement and that he or she is signing this Agreement of his or her own free will without any duress or coercion being applied to him or her by the Company.

THE COMPANY:

By: _Mike Barrett_
Duly Authorized Agent of the Company

~~Account Executive~~ Signature
**INA**

—4—

Exhibit 1 – Page 28

# GLOBAL TECHNICAL SEARCH, INC ( The Company )

## EXHIBIT "A"

### SECTION 3) COMPENSATION:

Independent National Associate (INA) shall be paid a weekly draw of $350.00 per week for expense reimbursement. That reimbursement will be for auto, business, travel, etc., related expenses. A commission will be paid on all placements closed by INA pursuant to the attached schedule. Taxes will be taken out of the commission per the INA W-4. There will be a 90 day probationary period of association with the "Company", before full INA status is achieved.

Any increase beyond $1400.00 per month shall be at the sole discretion of the "Company" and will be based upon performance and production. Any increase in the monthly reimbursement will be considered a "draw " against commissions. The " draw " can be withheld against any salary or commission due the INA upon termination or resignation.

Commissions are paid as outlined in "Guidelines and Commissions " and will only be paid to an INA after the candidate "placed" has started and the agreed guarantee period has past. Only an INA, still with the "Company" and in good standing will be due any commission.

### SECTION 6) PROPRIETARY INFORMATION

INA understands and agrees that some time may be spent at home in the course of doing work for the " Company" and that all information, files, etc. are property of the " Company ".

_____                    5-8-06
Independent National Associate                      Date

Exhibit 1 - Page 29

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 148475   — SH**

**March 06, 2008
14:15:33**

**Civ Fil Non-Pris**
USAO #.: 08CV0424
Judge..: ROGER T BENITEZ
Amount.:                    $350.00 CK
Check#.: BC11356

**Total—>   $350.00**

FROM: GLOBAL TECHNICAL SEARCH INC
       V. LELAND JACOBSEN

**ORIGINAL**

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**FILED**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| GLOBAL TECHNICAL SEARCH, INC., dba GLOBAL SEARCH, a California Corporation | LELAND JACOBSEN, an individual, and DOES 1 through 25, inclusive |

08 MAR -6 PM 2:00

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

BY:  CP  DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Timothy S. Noon, Esq.   (619) 235-6200
Noon & Associates, 501 W. Broadway #710
San Diego, CA  92101

Attorneys (If Known)

**08 CV 0424 BEN BLM**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. section 1030
Brief description of cause:
Violation of Computer Fraud Abuse Act

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions) JUDGE _____ DOCKET NUMBER _____

DATE  March 6, 2008

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 148475   AMOUNT  #350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

sec 3/6/08

CR