Timothy S. Noon, Esq. (SBN 166193)
Kathy J. Steinman, Esq. (SBN 221344)
**NOON & ASSOCIATES, APC**
501 West Broadway, Suite 710
San Diego, California 92101
Telephone: (619) 235-6200
Facsimile: (619) 235-6233

Attorneys for Plaintiff GLOBAL TECHNICAL SEARCH, INC.
dba GLOBAL SEARCH

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL TECHNICAL SEARCH, INC. dba GLOBAL SEARCH, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>LELAND JACOBSEN, an individual; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 3:08-CV-00424-BEN-BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF GLOBAL TECHNICAL SEARCH, INC. dba GLOBAL SEARCH'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Roger T. Benitez<br>Dept.: Courtroom 3<br>Date: March 21, 2008<br>Time: 9:30 a.m. |

GLOBAL TECHNICAL SEARCH, INC. ("GLOBAL SEARCH") respectfully submits the following Memorandum of Points and Authorities in Support of Its Application for Temporary Restraining Order and Motion for Preliminary Injunction:

///
///
///
///
///
///

# TABLE OF CONTENTS

I. INTRODUCTION ................................................. 1

II. STATEMENT OF FACTS ........................................... 2

    A. GLOBAL SEARCH's CONFIDENTIAL AND PROPRIETARY INFORMATION ....... 2

    B. JACOBSEN'S EMPLOYMENT AND EMPLOYMENT AGREEMENT WITH GLOBAL SEARCH ............................................. 3

    C. JACOBSEN DOWNLOADS GLOBAL SEARCH's CONFIDENTIAL AND PROPRIETARY INFORMATION WITHOUT AUTHORITY ..................... 5

    D. JACOBSEN IS USING GLOBAL SEARCH'S CONFIDENTIAL AND PROPRIETARY INFORMATION ..................................... 6

III. ENABLING AUTHORITY ........................................... 7

IV. GOOD CAUSE EXISTS TO GRANT A TEMPORARY RESTRAINING ORDER ........ 7

    A. GLOBAL SEARCH IS LIKELY TO PREVAIL ON THE MERITS OF EACH OF ITS CLAIMS ............................................... 8

        1. GLOBAL SEARCH Is Likely to Prevail on Its Computer Fraud Abuse Act Claim ........................................... 8

        2. GLOBAL SEARCH Is Likely to Prevail on Its Claims for Violation of California *Penal Code* §502(c) ............................ 10

        3. GLOBAL SEARCH Is Likely to Prevail on Its Claim for Unlawful Business Practices ........................................ 11

        4. GLOBAL SEARCH Is Likely to Prevail on Its Claim for Breach of Written Contract ......................................... 11

        5. GLOBAL SEARCH Is Likely to Succeed on Its Claim for Conversion ............................................. 12

        6. GLOBAL SEARCH IS Likely to Succeed on Its Claim for Declaratory Relief ....................................... 13

    B. GLOBAL SEARCH WILL SUFFER IMMEDIATE AND IRREPARABLE HARM WITHOUT A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ............................................... 13

    C. THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF GRANTING GLOBAL SEARCH THE REQUESTED TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ..................... 14

V. CONCLUSION .................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531 .................. 14

*Save Our Sonoran, Inc. v. Flowers, et al.* 408 F.3d 1113 ...................... 7, 8

*Shurguard Storage Centers, Inc. v. Safeguard Self Storage*, 119 F.Supp.2d 1121 .......... 9

**Federal Rules**

Federal Rule of Civil Procedure rule 65(b)(1) ................................ 7

**Codes**

California *Business and Professions Code* section 17200 ............................ 11

California *Penal Code* §502(c) ............................................. 10, 11

**Other Authority**

Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030. ...................... 8, 9

Witkin, Summary of California Law - Torts (10th ed.) at §699 ...................... 12

## I. **INTRODUCTION**

GLOBAL SEARCH is a recruiting firm that specializes in recruiting and placing personnel and executives for environmental, engineering and corporate employer-clients nationwide. GLOBAL SEARCH has invested substantial time and money developing information and knowledge relating to its employer-clients and the business of recruiting and placing candidates. This information developed by GLOBAL SEARCH over the past 18 years is confidential and proprietary and contains confidential employer-client and candidate information, including but not limited to, identity of candidates, candidate information, identity of employer-clients, personnel needs of employer-clients, fee agreements, pricing, and other sensitive and confidential information.

Defendant LELAND JACOBSEN was an employee with GLOBAL SEARCH from on or about May 8, 2006 to on or about January 2, 2008. GLOBAL SEARCH recently learned that JACOBSEN downloaded GLOBAL SEARCH's confidential and proprietary information without GLOBAL SEARCH's consent and is using said information for his own purposes. GLOBAL SEARCH also recently learned that JACOBSEN has recently contacted several of GLOBAL SEARCH's employer-clients and offered his services in personnel recruitment and placement.

GLOBAL SEARCH has filed concurrently with this application a Complaint asserting causes of action for: violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030; violation of California *Penal Code* section 502(c)(2); unfair business practices in violation of California *Business and Professions Code* section 17200, *et seq.*; breach of contract; conversion; and declaratory relief.

There is no doubt that GLOBAL SEARCH is likely to succeed on the merits of each of its claims and that GLOBAL SEARCH is in need of immediate injunctive relief from this Court to protect it from any further misconduct by JACOBSEN. For these reasons, and the reasons stated more fully below, GLOBAL SEARCH respectfully requests that its Emergency Application for Temporary Restraining Order and Motion for Preliminary Injunction be granted as requested.

///

///

## II. STATEMENT OF FACTS

### A. GLOBAL SEARCH'S CONFIDENTIAL AND PROPRIETARY INFORMATION

GLOBAL SEARCH is a recruiting firm that specializes in recruiting and placing personnel and executives for environmental, engineering and corporate employer-clients nationwide. GLOBAL SEARCH has invested substantial time and money developing information and knowledge relating to its employer-clients and the business of recruiting and placing candidates. (Declaration of Michael Burnett ("Burnett Dec.") at ¶ 3.) This information developed by GLOBAL SEARCH over the past 18 years is confidential and proprietary and contains confidential employer-client and candidate information, including but not limited to, identity of candidates, candidate information, identity of employer-clients, personnel needs of employer-clients, fee agreements, pricing, and other sensitive and confidential information. (Burnett Dec. at ¶ 4.)

GLOBAL SEARCH organizes, maintains and accesses this confidential and proprietary information it has developed using the ACT! software program installed on GLOBAL SEARCH's networked office computers. (Burnett Dec. at ¶ 5.) Employees input this confidential and proprietary information into the ACT! database and use the software to match potential employment candidates to prospective employers in furtherance of GLOBAL SEARCH's recruitment business. (Burnett Dec. at ¶ 6; Declaration of Linda Rutherford ("Rutherford Dec.") at ¶ 5.) GLOBAL SEARCH and its employees additionally use these computers to communicate with clients nationwide. (Burnett Dec. at ¶ 7.) GLOBAL SEARCH rigorously maintains the confidentiality of its proprietary information because the information provides GLOBAL SEARCH with a competitive advantage in the marketplace from which GLOBAL SEARCH derives economic value. (Burnett Dec. at ¶ 8.) Furthermore, GLOBAL SEARCH informs the candidates and its employer-clients that information they provide GLOBAL SEARCH to assist in the placement and/or recruitment of candidates will be kept confidential. (Burnett Dec. at ¶ 9.)

///
///
///

### B. JACOBSEN'S EMPLOYMENT AND EMPLOYMENT AGREEMENT WITH GLOBAL SEARCH

JACOBSEN was an employee with GLOBAL SEARCH from on or about May 8, 2006 to on or about January 2, 2008. (Burnett Dec. at ¶ 11.) His job title was Independent National Associate. (Burnett Dec. at ¶ 12.) JACOBSEN entered into a written employment agreement with GLOBAL SEARCH on or about May 8, 2006. (Burnett Dec. at ¶ 12.) The employment agreement was signed on behalf of GLOBAL SEARCH by Michael Burnett. (Burnett Dec. at ¶ 12.) A true and correct copy of the employment agreement, titled Independent National Associate Account Executive Employment Agreement ("Employment Agreement") is lodged herewith as **Exhibit "1."**

GLOBAL SEARCH specifically included terms in the Employment Agreement regarding its confidential and proprietary information. Section 2(a)(vii) of the Employment Agreement states that the Independent National Associate ("INA"):

> acknowledges that the duties of an INA are confidential, sensitive and professional in nature, and that they require the Account Executive to function in a discretionary executive capacity with regard to screening candidates and advising candidates and employer-clients, assisting them in negotiations, and otherwise developing and managing the areas of the Company's business for which the INA is assigned responsibility . . .

Section 4(f) of the Employment Agreement further states:

> the term "Company's Proprietary Information" as used in this Agreement means the Company's confidential proprietary information constituting the trade secrets of the Company, including but not limited to information of a technical and business nature pertaining to the Company's personnel placement service business, the identity of candidates, the personal information supplied by candidates, information concerning the identy [sic] of employer-clients and their personnel, the personnel needs and requirements of employer-clients and terms and conditions under which the Company deals with employer-clients, other customer lists, training manuals, training tapes, computer programs, films, video cassettes, records, forms, unique techniques, methods and procedures for the operation of a personnel placement service business or similar types of businesses, its contacts with such companies, its suppliers, etc. . . .

Section 5(b)(i) of the Employment Agreement states:

> that *upon termination of this Agreement, the INA shall immediately turn over to the Company the Company's Proprietary Information*, including but without limiting the generality of the foregoing, any and all lists, documents, or other types of records and any written, typed or printed materials identifying the candidates of the Company or identifying the employer-clients or personnel of employer-clients together with any and all data involving advertising techniques, candidate processing, forms, correspondence or data in any way involving the Company's techniques, training manuals, training tapes, video cassettes, computer programs, materials, methods or contacts, *and that the INA shall have no right to retain any copies of the foregoing for any reason whatsoever after termination of his or her employment hereunder* without the express written consent of the Company . . . .

[Emphasis added.]

Section 6 of the Employment Agreement states:

> (a) It is understood and agreed that, in the course of his or her employment hereunder and through the INA's activities for and on behalf of the Company, the INA will receive, deal with and have access to the Company's Proprietary Information and that the INA holds the Company's Proprietary Information in trust and confidence for the Company.
>
> (b) *The INA agrees that he or she shall not, during the term of this Agreement, or thereafter in any fashion, form or manner, directly or indirectly, retain, make copies of, divulge, disclose or communicate to any person, in any manner whatsoever, except when necessary or required in the normal course of the INA employment hereunder and for the benefit of the Company or with the express written consent of the Company:*
>
> > (i) *the Company's Proprietary Information; or*
> >
> > (ii) *any information of any kind, nature or description whatsoever concerning any matters affecting or relating to the Company's personnel placement service business and the Company's personnel placement service.*

[Emphasis added.]

///

### C. JACOBSEN DOWNLOADS GLOBAL SEARCH'S CONFIDENTIAL AND PROPRIETARY INFORMATION WITHOUT AUTHORITY

During his employment with GLOBAL SEARCH, JACOBSEN was authorized to, and routinely did, access GLOBAL SEARCH's computers and ACT! database, which contained GLOBAL SEARCH's proprietary information, for the purpose of performing his duties in recruiting and placing candidates. (Burnett Dec. at ¶ 14.) In late December 2007, JACOBSEN informed another employee of GLOBAL SEARCH, Linda Rutherford, that he had just had a phone line installed at his home, that he was going to download GLOBAL SEARCH's database, which contained GLOBAL SEARCH's confidential and proprietary information, and that he would not be returning to work at GLOBAL SEARCH. (Rutherford Dec. at ¶ 4.) JACOBSEN had previously informed Ms. Rutherford in November and December 2007 that he was planning on starting his own recruitment search firm. (Rutherford Dec. at ¶ 3.)

On or about January 2, 2008, JACOBSEN came in to work early and stayed later than was normal for him. (Burnett Dec. at ¶ 15; Rutherford Dec. at ¶ 7.) On or about January 3, 2008, Ms. Rutherford informed Michael Burnett, her supervisor, that she believed that JACOBSEN intended to download the ACT! database for his own personal use and that JACOBSEN had told her he was planning to start his own search firm. (Rutherford Dec. at ¶ 8.)

On January 3, 2008, Mr. Burnett contacted Mark McKinley, a forensic computer consultant, and requested that Mr. McKinley examine and analyze JACOBSEN's computer to determine if JACOBSEN had indeed downloaded GLOBAL SEARCH's confidential and proprietary information. (Burnett Dec. at ¶ 17; McKinley Dec. at ¶ 3.)

On January 3, 2008, Mr. McKinley examined and analyzed Mr. JACOBSEN's office computer. (McKinley Dec. at ¶ 4.) Mr. McKinley was able to determine that there were two insertions of a USB memory stick, which are used to download information, into JACOBSEN's computer on January 2, 2008, one at 7:45 a.m. and one at 7:46 a.m. (McKinley Dec. at ¶ 4.) The memory stick inserted was a Corsair 4 gigabyte Flash Voyager memory stick, with a serial number A900000000245435&0#)53f56307-b6bf-11d0-94f2-00a0c913fb8b. (McKinley Dec. at ¶ 7; Burnett Dec. at ¶ 18.)

GLOBAL SEARCH also routinely retains Ken Dubs, Jr. to design and maintain GLOBAL SEARCH's website. (Burnett Dec. at ¶ 19.) On January 3, 2008, Mr. Dubs was at GLOBAL SEARCH's office setting up the internet on several office computers, including Mr. JACOBSEN's computer. (Burnett Dec. at ¶ 19.) While at GLOBAL SEARCH's office, Mr. Dubs, together with Mr. Burnett found the packaging for a USB memory stick in the wastebasket at Mr. JACOBSEN's desk. (Burnett Dec. at ¶ 19; McKinley Dec. at ¶ 7.) The packaging was for a Corsair 4 gigabyte Flash Voyager memory stick, the same as that identified on JACOBSEN's computer file management print out. (McKinley Dec. at ¶ 7; Burnett Dec. at ¶ 19.) The package had been opened and the memory stick removed. (Burnett Dec. at ¶ 19.) A USB memory stick can be used to copy and store information from a computer's hard-drive to the memory stick, which can then be transferred from the memory stick to another computer system. (McKinley Dec. at ¶ 8.) A memory stick with a 4 gigabyte storage capacity would be able to store the confidential and proprietary information contained in GLOBAL SEARCH's ACT! database. (McKinley Dec. at ¶ 9.)

GLOBAL SEARCH never gave JACOBSEN its consent or authorization to download any of its confidential and proprietary information from its computers for his own personal use. (Burnett Dec. at ¶ 20.) JACOBSEN's authority to access and/or use the proprietary information and database was limited to the purpose of performing his job duties as an Independent National Associate with GLOBAL SEARCH. (Burnett Dec. at ¶ 21.)

JACOBSEN did not return to work at GLOBAL SEARCH after January 2, 2008.

D.  **JACOBSEN IS USING GLOBAL SEARCH'S CONFIDENTIAL AND PROPRIETARY INFORMATION**

JACOBSEN has recently contacted several of GLOBAL SEARCH's employer-clients and offered his services in personnel recruitment and placement. This was confirmed when Mr. Burnett contacted several of GLOBAL SEARCH's employer-clients and was informed that they had recently been contacted by JACOBSEN offering his services in recruiting and placing candidates. (Rutherford Dec. at ¶ 22.) JACOBSEN has also recently contacted candidates listed in the database offering his services. (Declaration of Dan Beasley ("Beasley Dec." at ¶ 5.)

Moreover, Mr. Burnett received correspondence dated February 8, 2008, from an attorney, William T. Pascoe, representing JACOBSEN which stated that Mr. JACOBSEN was "free to contact any former clients or business connections with whom he established any relationship, whether or not they are a current client of Global Technical Search, Inc." A true and correct copy of this letter is lodged herewith as **Exhibit "2."**

### III.   ENABLING AUTHORITY

Federal Rule of Civil Procedure rule 65(b)(1) states:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Federal Rule of Civil Procedure rule 65(a)(1) provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party."

### IV.   GOOD CAUSE EXISTS TO GRANT A TEMPORARY RESTRAINING ORDER

The Ninth Circuit has developed two tests to be used in determining whether preliminary injunctive relief or a temporary restraining order should be granted.

> Under the "traditional" criteria, a plaintiff must show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." [Citations omitted.] Alternatively, a court may grant the injunction if the plaintiff "demonstrates *either* a combination or probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." [Citations omitted.]

*Save Our Sonoran, Inc. v. Flowers, et al.* 408 F.3d 1113, 1120 (2005 9th Cir.)

Here, the evidence is overwhelming that GLOBAL SEARCH is likely to succeed on its claims, that it will be irreparably harmed if JACOBSEN is not enjoined, and that serious questions

are raised sufficient to warrant a temporary restraining order and preliminary injunction given the balance of hardships.

### A. GLOBAL SEARCH IS LIKELY TO PREVAIL ON THE MERITS OF EACH OF ITS CLAIMS

As stated above, under either the "traditional" or "alternative" test, a plaintiff must show a likelihood of prevailing on the merits to obtain a temporary restraining order or a preliminary injunction. *Save Our Sonoran, Inc., supra*, 408 F.3d at 1120. Given the overwhelming evidence before this Court presented through multiple affidavits, GLOBAL SEARCH can demonstrate a likelihood of success on each of its claims.

#### 1. GLOBAL SEARCH Is Likely to Prevail on Its Computer Fraud Abuse Act Claim

GLOBAL SEARCH's first cause of action is for violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030. The CFAA provides, in relevant part:

(a) Whoever -

\* \* \*

(5)(A)(iii) *intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage*; and

(B) by conduct described in clause . . . (iii) of subparagraph (A), caused . . .

(i) loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value . . .

\* \* \*

(e)(2) the term "protected computer" means a computer -

\* \* \*

(B) which is used in interstate or foreign commerce or communication . . . .

\* \* \*

///

///

> (g) Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.

[Emphasis added.]

The CFAA expressly provides plaintiffs, like GLOBAL SEARCH, with a civil cause of action against those, like JACOBSEN, who have caused a plaintiff to suffer damage or loss through a violation of the CFAA. One of the remedies available to injured parties through the CFAA is injunctive relief. (18 U.S.C. §1030(g).) JACOBSEN plainly violated the provisions in the statute.

GLOBAL SEARCH organizes, maintains and accesses its confidential and proprietary information it has developed over the past 18 years using the ACT! software program installed on GLOBAL SEARCH's networked office computers. (Burnett Dec. at ¶¶ 3-5.) Employees input this confidential and proprietary information into the ACT! database and use the software to match potential employment candidates to prospective employers in furtherance of GLOBAL SEARCH's recruitment business. (Burnett Dec. at ¶ 6.; Rutherford Dec. at ¶ 5.) GLOBAL SEARCH and its employees additionally use these computers to communicate with clients nationwide. (Burnett Dec. at ¶ 7.)

JACOBSEN violated the CFAA when he accessed and downloaded this protected information without GLOBAL SEARCH's authorization for the benefit of himself. (*Shurguard Storage Centers, Inc. v. Safeguard Self Storage*, 119 F.Supp.2d 1121 (W.D. Wash. 2000) (enjoining former employees under the CFAA).) In *Shurgard Storage,* the plaintiff alleged that one of its competitors engaged in a scheme to steal its trade secrets and employees. Plaintiff also alleged that, in furtherance of that scheme, some of its own employees prior to terminating their employment used its computers to e-mail confidential information to the defendant. The *Shurgard* Court found that the plaintiff stated a claim under the CFAA and that its employees were no longer "authorized" to access this information once they began acting outside the scope of their employment with the plaintiff. *(Id.* at 1124.)

///

Similarly, JACOBSEN intentionally accessed GLOBAL SEARCH's computers and ACT! database to download information for his own personal use. Such action was in excess of JACOBSEN's permissive use of his office computer, the ACT! database, and the confidential and proprietary information contained thereon. There is clear and convincing evidence that JACOBSEN downloaded the database to a USB memory stick on January 2, 2008 and that he is currently using the information he downloaded to contact GLOBAL SEARCH's clients in an effort to directly compete with GLOBAL SEARCH. Indeed, Mr. JACOBSEN admitted to a colleague, Ms. Rutherford, that he intended to download the database and that he would be leaving GLOBAL SEARCH to start his own firm and his own attorney informed Mr. Burnett that Mr. JACOBSEN was free to contact former clients or business associates, indicating Mr. JACOBSEN was using or intended to use the information contained in the database to make these contacts. Moreover, JACOBSEN's actions have caused damages to GLOBAL SEARCH in excess of $5,000.00 in costs to retain a forensic computer consultant, lost billable time in the investigation and lost revenue. Therefore, it is likely that GLOBAL SEARCH will prevail on this claim.

2. **GLOBAL SEARCH Is Likely to Prevail on Its Claims for Violation of California *Penal Code* §502(c)**

California *Penal Code* section 502, *et seq.*, provides in relevant part:

> (c)   . . . any person who commits any of the following acts is guilty of a public offense:
>
> * * *
>
> (2)   *Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.*
>
> * * *
>
> (e)(1)  In addition to any other civil remedy available, the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the

> provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief. . . .

[Emphasis added.]

California *Penal Code* section 502(c) is California's version of the CFAA and also includes injunctive relief as a remedy for the aggrieved party. Accordingly, the same arguments set forth above as to why GLOBAL SEARCH would prevail on its claim for violations of the CFAA similarly apply to its claim for violations of *Penal Code* section 502(c).

### 3. GLOBAL SEARCH Is Likely to Prevail on Its Claim for Unlawful Business Practices

GLOBAL SEARCH's third cause of action is for unlawful business practices, in violation of California *Business and Professions Code* section 17200, *et seq.* California *Business and Professions Code* section 17200 provides that unfair competition shall mean and include "all unlawful, unfair of fraudulent business practices and unfair, deceptive, untrue or misleading advertising." As outlined above, JACOBSEN has violated both the Computer Fraud Abuse Act and California *Penal Code* section 502(c) by accessing and downloading GLOBAL SEARCH's database containing its confidential and proprietary information. JACOBSEN continued to engage in unlawful business practices when he used the misappropriated information to contact and solicit business from GLOBAL SEARCH's clients. Given this, GLOBAL SEARCH is likely to succeed on its claim for unlawful business practices.

### 4. GLOBAL SEARCH Is Likely to Prevail on Its Claim for Breach of Written Contract

GLOBAL SEARCH's fourth cause of action is for breach of written contract, specifically, the Employment Agreement JACOBSEN entered into with GLOBAL SEARCH. As set forth above, JACOBSEN entered into a written employment agreement with GLOBAL SEARCH on or about May 8, 2006. (Burnett Dec. at ¶ 12.) The Employment Agreement was signed on behalf of GLOBAL SEARCH by Michael Burnett. (Burnett Dec. at ¶ 12.) A true and correct copy of the Employment Agreement is lodged herewith as **Exhibit "1."**

///

1  The Employment Agreement contained express provisions defining what GLOBAL
2  SEARCH's confidential and proprietary information was and specifically stated that Mr.
3  JACOBSEN was required to return any such information upon termination of his employment
4  with the company. JACOBSEN also expressly agreed not to take, disclose or disseminate any
5  confidential or proprietary information. However, JACOBSEN clearly downloaded the database
6  from his office computer to a USB memory stick and is now using the confidential and
7  proprietary information contained in that database to contact GLOBAL SEARCH's clients and
8  candidates in an effort to directly compete with GLOBAL SEARCH in its employment
9  recruitment business. Tellingly, this download occurred on what was ultimately Mr.
10 JACOBSEN's last day of employment with GLOBAL SEARCH as he did not return to work
11 after the day of the downloads. Such action is clearly in violation of the terms of the Employment
12 Agreement JACOBSEN entered into with GLOBAL SEARCH. Therefore, GLOBAL SEARCH
13 is also likely to succeed on its claim for breach of contract.

14  **5.   GLOBAL SEARCH Is Likely to Succeed on Its Claim for Conversion**
15  GLOBAL SEARCH's fifth cause of action is for conversion. GLOBAL SEARCH
16 contends that JACOBSEN's act of downloading and taking its database containing its confidential
17 and proprietary information constituted a conversion of GLOBAL SEARCH's property. Under
18 California law "[c]onversion is the wrongful exercise of dominion over personal property of
19 another." (Witkin, Summary of California Law - Torts (10th ed.) at §699.) GLOBAL SEARCH
20 will likely be able to establish that JACOBSEN wrongfully downloaded and took its database. An
21 analysis of JACOBSEN's office computer conducted on January 3, 2008 showed two downloads
22 of information to a Corsair 4 gigabyte Flash Voyager memory stick on January 2, 2008, Mr.
23 JACOBSEN's last day of employment with GLOBAL SEARCH. (McKinley Dec. at ¶ 4.)
24 Moreover, the packaging for a Corsair 4 gigabyte Flash Voyager memory stick was found in the
25 wastebasket at JACOBSEN's desk on January 3, 2008. (Burnett Dec. at ¶ 19; McKinley Dec. at
26 ¶ 7.) The packaging had been opened and the memory stick removed. (Burnett Dec. at ¶ 19.)
27 Additionally, JACOBSEN told his colleague, Ms. Rutherford, that he intended to download
28 ///

GLOBAL SEARCH's database and start his own recruitment firm. (Rutherford Dec. at ¶ 4.) Therefore, GLOBAL SEARCH is more than likely to prevail on its claim for conversion.

### 6. <u>GLOBAL SEARCH IS Likely to Succeed on Its Claim for Declaratory Relief</u>

GLOBAL SEARCH's sixth cause of action is for declaratory relief. GLOBAL SEARCH requests the Court make certain findings and determinations regarding the rights and duties of each parties. Specifically, GLOBAL SEARCH asks the Court to make determinations regarding the rights and duties as defined in the Employment Agreement and that JACOBSEN breached the Employment Agreement by downloading GLOBAL SEARCH's confidential and proprietary information without GLOBAL SEARCH's knowledge and consent and using said information to gain a competitive advantage over plaintiff. Given the evidence regarding the download from JACOBSEN's office computer, his contacting GLOBAL SEARCH's employer-clients and candidates, and his statements that he intended to take the database and start his own recruitment firm as set forth above, it is likely that GLOBAL SEARCH will prevail on its claim for declaratory relief.

### B. <u>GLOBAL SEARCH WILL SUFFER IMMEDIATE AND IRREPARABLE HARM WITHOUT A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

If GLOBAL SEARCH does not obtain immediate injunctive relief in this case, it will suffer devastating and irreparable harm. If JACOBSEN is allowed to continue to use the confidential and proprietary information he misappropriated from GLOBAL SEARCH, GLOBAL SEARCH will lose the competitive advantage it has obtained from this information which it has invested many years of effort and significant sums of money to develop. Moreover, GLOBAL SEARCH faces irreparable harm if JACOBSEN were to disclose this information to other potential competitors. Finally, GLOBAL SEARCH would further be irreparably harmed if information regarding the candidates or the employer-clients were disclosed, as GLOBAL SEARCH informs the candidates and the employer-clients that there information will be kept confidential. Damages would not be an adequate remedy for actual or threatened disclosure of such confidential and proprietary information.

Unless JACOBSEN is enjoined as requested, there is a significant threat that GLOBAL SEARCH's information will be disclosed to others, significantly impairing GLOBAL SEARCH's ability to protect that information. JACOBSEN's possession of GLOBAL SEARCH's information gives its competitors, including JACOBSEN, an unfair short-cut advantage, potentially leading to lost clients and market share for GLOBAL SEARCH, as well as damage to GLOBAL SEARCH's nationwide reputation as a recognized industry leader in employment recruitment specializing in engineering and science. Only through an immediate injunction will further injury be prevented.

### C. THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF GRANTING GLOBAL SEARCH THE REQUESTED TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

In considering the appropriateness of injunctive relief, the court should balance the possible harm to plaintiff from denying the temporary restraining order against the possible harm to the defendant from granting it. *See, e.g., Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531 (1987).

Here, JACOBSEN will not suffer undue hardship if a temporary restraining order or a preliminary injunction is granted. JACOBSEN is still free to operate his own recruitment search firm; he would just be prohibited from using GLOBAL SEARCH's confidential and proprietary information contained in the database while doing so. Any harm that would be suffered by JACOBSEN, which is minimal, should be discounted by the fact that it is the result of his own unlawful behavior. Furthermore, the harm that GLOBAL SEARCH would suffer, as described above, far outweighs any harm JACOBSEN might incur if the temporary restraining order and injunction were granted. When the certain immediate and irreparable harm to GLOBAL SEARCH is weighed against the minimal harm (or "hardship") that would be imposed on JACOBSEN if a temporary restraining order and preliminary injunction are entered, the equities weigh heavily in favor of GLOBAL SEARCH.

Additionally, it is in the public interest to grant the requested temporary restraining order and preliminary injunction. The protection of personal information is at a premium these days especially given the prevalence of identity theft, stalking, etc. Potential candidates seeking

employment provide their personal information to a recruiter with the expectation that it will be kept confidential and private. When such information is wrongfully taken from the recruiter, it could cause major concern with the candidates that their personal information may be misused or fall into the wrong hands. Clearly, it is in the public's interest to protect personal information from misuse or dissemination.

V.   **CONCLUSION**

For all of the foregoing reasons, GLOBAL SEARCH respectfully requests that its Application be granted and that the court enter temporary restraining order as follows:

(1)   That JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be temporarily and preliminarily enjoined from using or disclosing any confidential or proprietary information that JACOBSEN obtained from GLOBAL SEARCH;

(2)   That JACOBSEN, his officers, agents, servants, employees, and attorneys and all parties in active concert or participation with him be enjoined and ordered to return to GLOBAL SEARCH all originals and all copies of files, data, and information removed from GLOBAL SEARCH, including, but not limited to, the confidential and proprietary information and database that JACOBSEN downloaded;

(3)   That because the information downloaded from GLOBAL SEARCH's computers by JACOBSEN was in an electronic format that can be quickly and easily disseminated to a large number of entities, perfectly copied, uploaded onto other computers, and forwarded to other individuals who can further utilize and disseminate the information, JACOBSEN be ordered immediately to preserve all discs, memory sticks and electronic storage devices in his possession, custody and control to which he had access, that JACOBSEN must turn over to a third-party investigator representative of GLOBAL SEARCH all electronic storage media in his possession, custody or control, including but not limited to, discs, memory sticks and hard drives accessible to JACOBSEN on which GLOBAL SEARCH's information may reside and that GLOBAL SEARCH be permitted to image and analyze said media and devices to recover GLOBAL SEARCH's confidential and proprietary information; and

  (4) That JACOBSEN be enjoined and ordered to provide a sworn statement and accounting of the whereabouts of all files, data, and information removed from GLOBAL SEARCH's computers.

  GLOBAL SEARCH also respectfully requests that the Court set a further hearing within 10 days of this application as to GLOBAL SEARCH's motion for a preliminary injunction requesting that JACOBSEN be enjoined from the same actions as set forth above in the request for a temporary restraining order.

Dated: March 18, 2008      NOON & ASSOCIATES, APC

               By: _____
                 Timothy S. Noon
                 Kathy J. Steinman
                 Attorneys for Plaintiff GLOBAL
                 TECHNICAL SEARCH, INC. dba
                 GLOBAL SEARCH