Timothy S. Noon, Esq. (SBN 166193)
Kathy J. Steinman, Esq. (SBN 221344)
NOON & ASSOCIATES, APC
501 W. Broadway, Ste. 710
San Diego, CA 92101
Telephone: (619) 235-6200
Facsimile: (619) 235-6233

Attorneys for Plaintiff GLOBAL TECHNICAL SEARCH, INC.
dba GLOBAL SEARCH

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL TECHNICAL SEARCH, INC. dba GLOBAL SEARCH, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>LELAND JACOBSEN, an individual; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 3:08-cv-00424-BEN-BLM<br><br>DECLARATION OF MICHAEL BURNETT IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF GLOBAL TECHNICAL SEARCH, INC. dba GLOBAL SEARCH'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION |

I, Michael Burnett, declare as follows:

1. I am the General Manager of GLOBAL TECHNICAL SEARCH, INC. dba GLOBAL SEARCH ("GLOBAL SEARCH"). Unless stated as relying on information and belief, the facts contained in this declaration are based on personal knowledge, and if called to testify, I could and would do so competently thereto.

2. I founded GLOBAL SEARCH approximately 18 years ago. GLOBAL SEARCH is a recruiting firm that specializes in recruiting and placing personnel and executives for environmental, engineering and corporate employer-clients nationwide.

///

///

3. GLOBAL SEARCH has invested substantial time and money developing information and knowledge relating to its employer-clients and the business of recruiting and placing candidates.

4. This information developed by GLOBAL SEARCH over the past 18 years is confidential and proprietary and contains confidential employer-client and candidate information, including but not limited to, identity of candidates, candidate information, identity of employer-clients, personnel needs of employer-clients, fee agreements, pricing, and other sensitive and confidential information.

5. GLOBAL SEARCH organizes, maintains and accesses this confidential and proprietary information in a database it developed using the ACT! software program installed on GLOBAL SEARCH's networked office computers.

6. Employees input this confidential and proprietary information into the ACT! program and use the software database to match potential employment candidates to prospective employers in furtherance of GLOBAL SEARCH's recruitment business.

7. GLOBAL SEARCH and its employees additionally use these computers to communicate with clients nationwide.

8. GLOBAL SEARCH rigorously maintains the confidentiality of its proprietary information because the information provides GLOBAL SEARCH with a competitive advantage in the marketplace from which GLOBAL SEARCH derives economic value.

9. Furthermore, GLOBAL SEARCH informs the candidates and its employer-clients that information they provide GLOBAL SEARCH to assist in the placement and/or recruitment of candidates will be kept confidential.

10. Employees are required to sign an employment agreement containing a provision regarding GLOBAL SEARCH's confidential and proprietary information.

11. LELAND JACOBSEN was an employee with GLOBAL SEARCH from May 8, 2006 to January 2, 2008.

12. His job title was Independent National Associate. JACOBSEN entered into a written employment agreement with GLOBAL SEARCH on or about May 8, 2006. I signed

the employment agreement on behalf of GLOBAL SEARCH. A true and correct copy of this employment agreement, titled Independent National Associate Account Executive Employment Agreement ("Employment Agreement") is lodged herewith as **Exhibit "1."**

13. GLOBAL SEARCH specifically included terms in the Employment Agreement regarding its confidential and proprietary information:

> Section 2(a)(vii) of the Employment Agreement states that the Independent National Associate ("INA"):
>
>> acknowledges that the duties of an INA are confidential, sensitive and professional in nature, and that they require the Account Executive to function in a discretionary executive capacity with regard to screening candidates and advising candidates and employer-clients, assisting them in negotiations, and otherwise developing and managing the areas of the Company's business for which the INA is assigned responsibility . . .
>
> Section 4(f) of the Employment Agreement further states:
>
>> the term "Company's Proprietary Information" as used in this Agreement means the Company's confidential proprietary information constituting the trade secrets of the Company, including but not limited to information of a technical and business nature pertaining to the Company's personnel placement service business, the identity of candidates, the personal information supplied by candidates, information concerning the identy [sic] of employer-clients and their personnel, the personnel needs and requirements of employer-clients and terms and conditions under which the Company deals with employer-clients, other customer lists, training manuals, training tapes, computer programs, films, video cassettes, records, forms, unique techniques, methods and procedures for the operation of a personnel placement service business or similar types of businesses, its contacts with such companies, its suppliers, etc. . . .
>
> Section 5(b)(i) of the Employment Agreement states:
>
>> that ***upon termination of this Agreement, the INA shall immediately turn over to the Company the Company's Proprietary Information***, including but without limiting the generality of the foregoing, any and all lists, documents, or other types of records and any written, typed or printed materials identifying the candidates of the Company or identifying the employer-clients or personnel of employer-clients together with any and all

> data involving advertising techniques, candidate processing, forms, correspondence or data in any way involving the Company's techniques, training manuals, training tapes, video cassettes, computer programs, materials, methods or contacts, *and that the INA shall have no right to retain any copies of the foregoing for any reason whatsoever after termination of his or her employment hereunder* without the express written consent of the Company . . . .

[Emphasis added.]

Section 6 of the Employment Agreement states:

> (a) It is understood and agreed that, in the course of his or her employment hereunder and through the INA's activities for and on behalf of the Company, the INA will receive, deal with and have access to the Company's Proprietary Information and that the INA holds the Company's Proprietary Information in trust and confidence for the Company.
>
> (b) *The INA agrees that he or she shall not, during the term of this Agreement, or thereafter in any fashion, form or manner, directly or indirectly, retain, make copies of, divulge, disclose or communicate to any person, in any manner whatsoever, except when necessary or required in the normal course of the INA employment hereunder and for the benefit of the Company or with the express written consent of the Company:*
>
> > (i) *the Company's Proprietary Information; or*
> >
> > (ii) *any information of any kind, nature or description whatsoever concerning any matters affecting or relating to the Company's personnel placement service business and the Company's personnel placement service.*

[Emphasis added.]

14. During his employment with GLOBAL SEARCH, JACOBSEN was authorized to, and routinely accessed GLOBAL SEARCH's computers and ACT! database

///

DECLARATION OF MICHAEL BURNETT ISO APP. FOR TRO

1 which contained GLOBAL SEARCH's proprietary information for the purpose of performing his duties in recruiting and placing candidates.

15. I am informed and believe that on or about January 2, 2008, JACOBSEN came in to work early and stayed later than was normal for him.

16. On or about January 3, 2008, Linda Rutherford, a GLOBAL SEARCH employee, informed me that she believed that JACOBSEN intended to download the ACT! database for his own personal use and that JACOBSEN had told her he was planning to start his own search firm.

17. On January 3, 2008, I contacted Mark McKinley, a forensic computer consultant, and requested that Mr. McKinley examine and analyze JACOBSEN's computer to determine if JACOBSEN had indeed downloaded GLOBAL SEARCH's confidential and proprietary information.

18. Mr. McKinley informed me that there were two insertions of a USB memory stick, which are used to download of information, into JACOBSEN's computer on January 2, 2008, one at 7:45 a.m. and one at 7:46 a.m. Mr. McKinley further informed me that the USB memory stick inserted was a Corsair 4 gigabyte Flash Voyager memory stick, with a serial number A900000000245435&0#(53f56307-b6bf-11d0-94f2-00a0c913fb8b.

19. GLOBAL SEARCH also routinely retains Ken Dubs, Jr. to design and service GLOBAL SEARCH's website. On January 3, 2008, Mr. Dubs was at GLOBAL SEARCH's offices to set up the internet on various computers, including Mr. JACOBSEN's computer. While Mr. Dubs was at GLOBAL SEARCH's offices, he and I found the packaging for a USB memory stick in the wastebasket at Mr. JACOBSEN's desk. The packaging was for a Corsair 4 gigabyte Flash Voyager memory stick, with a serial number A900000000245435&0#(53f56307-b6bf-11d0-94f2-00a0c913fb8b. The package had been opened and the memory stick removed.

20. GLOBAL SEARCH never gave JACOBSEN its consent or authorization to download any of its confidential and proprietary information from its computers for his own personal use.

21. JACOBSEN=s authority to access and/or use the proprietary information and database was limited to the purpose of performing his job duties as an Independent National Associate with GLOBAL SEARCH, not to download and remove the information for his own use.

22. Mr. JACOBSEN recently contacted several of GLOBAL SEARCH's clients, Mactec and Golder Assoc's. I learned this when I telephoned Teresa Bezouska at Mactec and Randy Marsh at Golder Associates, and he/she informed me that Mr. JACOBSEN had recently contacted their business to offer his services in recruiting and placing potential employment candidates.

23. I have expended 45 hours investigating Mr. JACOBSEN's misappropriation of GLOBAL SEARCH's database and taking appropriate measures to protect GLOBAL SEARCH's interests and confidential and proprietary information. My usual and customary fee for my professional time is $200.00 per hour. When my time is coupled with the price of the computer consultant's, Mark McKinley, time, it exceeds $5,000.00.

24. I respectfully request this Court's discretion in protecting my company's proprietary information stolen by JACOBSEN that it took me eighteen years to develop.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on this 3rd day of March 2008 at Carlsbad, California.

_Michael Burnett_
Michael Burnett